**Benjamin LOZOYA, Petitioner,**

**v.**

**The STATE of Oklahoma, Respondent.**

**No. C–95–861.**

Court of Criminal Appeals of Oklahoma.

Nov. 5, 1996.

Rehearing Denied Jan. 13, 1997.

Roger McCoin, Oklahoma City, for Petitioner at trial.

Mac Oyler, Oklahoma City, for Petitioner on appeal.

Lisa Hammond, Asst. District Attorney, Oklahoma City, for the State at trial.

W.A. Drew Edmondson, Attorney General of Oklahoma and Jennifer B. Miller, Assistant Attorney General, Oklahoma City, for the State on appeal.

### OPINION DENYING PETITION FOR WRIT OF CERTIORARI

LUMPKIN, Judge:

Petitioner, Benjamin Lozoya, entered guilty pleas to the following charges and received the following sentences in Oklahoma County Case No. CF–92–5284: Count I, Trafficking in Illegal Drugs (63 O.S.1991, § 2–415) (30 years); Count II, Maintaining a Vehicle Where a Controlled Dangerous Substance is Kept (63 O.S.1991, § 2–404) (5 years); Count III, Possession of Controlled Dangerous Substance without a Tax Stamp (68 O.S.1991, § 450.3) (5 years). The Hon. Virgil C. Black, District Judge, ordered the sentences to be served concurrently. We affirm the convictions, but remand to allow the trial court to consider all sentencing options.

Petitioner entered a plea of guilty to the above charges on April 29, 1993. His original attorney did not properly perfect his appeal or file an application to withdraw his plea of guilty. His present attorney, Mac Oyler, filed an application for post-conviction relief in March 1995. The district court recommended this Court allow an appeal out of time in May 1995. We granted the appeal out of time on June 19, 1995. From that, Petitioner filed his application to withdraw his guilty plea, and the case is properly before this Court.

Based on certain allegations in Petitioner's brief, we called for a response from the State, which was timely filed. Petitioner filed a reply brief based on the State's response brief. We publish based on two issues of first impression: one dealing with the question of civil forfeiture, its impact on a double jeopardy claim and whether it has been waived; the other to resolve a potential conflict between provisions in the Delayed Sentencing Program for Young Adults (Sections 996 through 996.3 of Title 22) and the Trafficking in Illegal Drugs Act (Sections 2–414 through 2–420 of Title 63).

### I.

On September 2, 1992, Petitioner was en route to Texas from Iowa when he was stopped on Interstate 44 near Kelley Avenue in Oklahoma City by an Oklahoma Highway Patrol trooper for failure to dim lights. As the trooper approached the van, he noticed a strong smell of marijuana. A drug dog was called to the scene, and authorities discovered in the van approximately 350 pounds of marijuana, with a value of up to $1,200 per pound. Petitioner was paid $2,000 to drive the van to Texas from Iowa.

### II.

For his first proposition, Petitioner contends his criminal convictions are barred by the double jeopardy provisions of the United States Constitution because the State previously punished him by pursuing and completing a civil forfeiture of his vehicle and monies

in a prior separate proceeding. On September 9, 1992, Petitioner was charged with the above mentioned crimes. He also alleges that on October 29, 1992, the State filed a Notice of Seizure and Forfeiture, CJ–92–8984, seeking both the van Petitioner was driving (which he admitted he owned, although he said it was bought in Iowa for him to drive back to Texas) and $231.14 Petitioner possessed when he was arrested. He further alleges the Order of Forfeiture was issued December 21, 1992, forfeiting both the van and the money. He entered his pleas of guilty to the criminal charges on April 29, 1993, and was sentenced October 1, 1993. He claims his criminal conviction should be reversed because it amounted to a second punishment for his crimes.

## A.

■ Petitioner cites *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), and *Montana Department of Revenue v. Kurth Ranch,* 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), as authority a civil *in rem* forfeiture action constitutes double jeopardy. We need not deal with this extensively, as a more recent case, *United States v. Ursery,* 518 U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996) disposes of Petitioner's argument. In that case, the United States Supreme Court held that a civil *in rem* forfeiture does not constitute "punishment" for purposes of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. In doing so, it relied on a long line of previous cases, *Id.* at ——, 116 S.Ct. at 2147, 135 L.Ed.2d at 568, and limited the holdings of the cases cited above.

The Court distinguished *Halper* by observing it dealt not with a civil *forfeiture,* but a civil *penalty. Id.* at ——, 116 S.Ct. at 2144, 135 L.Ed.2d at 564. The *Halper* Court had used a case-by-case analysis to determine whether a penalty constituted punishment. The *Ursery* Court specifically rejected that analysis for a civil forfeiture; instead, it noted that the case-by-case balancing approach used in *Halper* "had been supplanted in *Austin* by a categorical approach that found a civil sanction to be punitive if it could not 'fairly be said solely to serve a remedial purpose.'" *Id.* at ——, 116 S.Ct. at 2145, 135 L.Ed.2d at 567. *Austin* itself dealt not with the Fifth Amendment protections against double jeopardy, but rather with the excessive punishment provisions of the Eighth Amendment. *Id.* at ——, 116 S.Ct. at 2143, 135 L.Ed.2d at 563.[1] The Supreme Court distinguished *Kurth Ranch* as a case dealing with a tax. *Id.* at ——, 116 S.Ct. at 2144, 135 L.Ed.2d at 564.

## B.

■ As we read *Ursery,* this Court must first make a determination whether our Legislature intended the forfeiture proceedings to be civil or criminal. *Id.* at ——, 116 S.Ct. at 2147, 135 L.Ed.2d at 568. Once we make that categorical determination, we must then determine whether the proceedings in general "are so punitive in fact as to 'persuade us that the forfeiture proceeding may not legitimately be viewed as civil in nature,' despite [the Legislature's] intent." *Id.* at ——, 116 S.Ct. at 2147, 135 L.Ed.2d at 568. In light of the earlier repudiation the Court's prior caselaw intended a case-by-case determination, we find both prongs of this analysis must be gleaned from the Legislative intent itself, and not done on a case-by-case basis,

1. Petitioner also cites *State ex rel., Dept. of Public Safety v. 1985 GMC Pickup, Serial No. 1GTBS14EOF2525894, OK Tag No. ZPE852,* 898 P.2d 1280 (Okl.1995), which relied on *Austin* for a portion of dicta stating forfeiture proceedings are punishment. The language is dicta because the question concerning whether forfeiture proceedings are punishment was not the question before the state Supreme Court. *See Id.,* 898 P.2d at 1282 ("The sole issue is whether simple possession of a controlled dangerous substance while occupying a vehicle is sufficient to trigger the forfeiture provisions of Sec. 2–503."). In arriving at its decision, the Oklahoma Supreme Court commented that in *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) the United States Supreme Court had held forfeiture proceedings constituted "punishment." Our state court was not concerned with double jeopardy; it was concerned with whether a forfeiture could constitute an excessive fine in violation of the Eighth Amendment. In light of *Ursery* and the reasons above, we need not rely on *GMC Pickup* as persuasive authority.

absent an argument the forfeiture constitutes an excessive fine under the Eighth Amendment.[2]

In making our determination, we find a well reasoned opinion by our own Court of Civil Appeals, while not binding on us, is persuasive. In *State ex rel. McGehee v. 1989 Ford F–150 Pickup, 1993 Texas License No. DYI–252, VIN. No. 1FTHF36L7EKA09102,* 888 P.2d 1036 (Okl.App.1994), the State appealed from an adverse order of the district court denying relief. In reversing the district court's order, Chief Judge Reif, writing for the court, noted federal cases cited by the defendant dealt with federal forfeiture statutes which those Courts concluded were primarily penal in nature. However,

> In contrast, the provisions of the Oklahoma controlled substance forfeiture statutes applicable to the case at hand, 63 O.S.Supp.1993 Secs. 2–503 and 2–506, are primarily remedial in nature. Their purpose is to abate past offending uses of property and to prevent future offending uses of the property. Other than the forfeiture of controlled substances themselves, all property mentioned in section 2–503 is subject to forfeiture by virtue of an offending use generally in relation to illegal manufacturing or distribution of controlled substances. As concerns the conveyance or vehicle forfeiture provision, this court has expressly held that a conveyance or vehicle is forfeitable only when it is an "instrumentality" for transportation, concealment, and cultivation of controlled substances for distribution. *State ex rel. McGehee v. 1983 Toyota Corolla,* 879 P.2d 830 (Okla.Ct.App.1994). (sic)

*Id.,* 888 P.2d at 1037.

The conclusion of the Court of Civil Appeals is supported by comments to the Uniform Controlled Substances Act, Sec. 505, of the Uniform Laws Annotated, after which our Section 2–503 was modeled (there are some changes in the act which are of no concern to the question before us). The comment reads:

> This Section is designed to provide forfeiture provisions for those States which do not already have them and to revise those State forfeiture laws which have become obsolete and unenforceable over the years. Effective law enforcement demands that there be a means of confiscating the vehicles and instrumentalities used by drug traffickers in committing violations under this Act. The reasoning is to prevent their use in the commission of subsequent offenses involving transportation or concealment of controlled substances and to deprive the drug trafficker of needed mobility ... With comprehensive and effective forfeiture provisions, States may be less reluctant to implement them and begin confiscating the tools of the drug trafficker.

9 Uniform Laws Annotated, Master Edition, Sec. 505 Comment, pp. 835–36.

■ We hold the provisions of Section 2–503 of Title 63 are not punitive in nature, but rather are civil and remedial in nature. That being the case, there is no Fifth Amendment double jeopardy violation, and this proposition is without merit.

### III.

■ The other issue of first impression deals with an alleged error by the trial court in considering its sentencing options. Petitioner pled guilty on April 29, 1993. Sentencing was delayed, and his attorney filed a motion on May 14, 1993, seeking sentencing under the Delayed Sentencing Program for Young Adults, 22 O.S.1991, §§ 996–996.3. The motion was granted on May 26, 1993, and Petitioner was sent to the RID[3] program. Sentencing was delayed until October 1, 1993. By all accounts, Petitioner did well in the RID program.

However, at sentencing, the district court held he could not suspend Petitioner's sentence, citing provisions of 63 O.S.1991, § 2–415 of the Drug Trafficking Act, which does not allow a suspended sentence. Petitioner

---

2. Petitioner made no such argument here.

3. "RID" is an acronym for "Regimented Inmate Discipline." The program is held at a special facility, and reports compare it to a boot-camp-type program, where discipline is stressed.

claims the court incorrectly interpreted the two provisions.

Under the Delayed Sentencing Program for Young Adults, a district court is required upon a finding or plea of guilty to delay sentencing for up to 120 days and commit the youthful offender to the Department of Corrections. During that time, the department must prepare a specialized offender accountability plan outlining details of the crime and punishment options. The court has the option to defer judgment and sentence, suspend the sentence or sentence the offender to a term prescribed by law. 22 O.S.1991, § 996.3.

Petitioner focuses on the definition of youthful "Offender." The statute in effect at the time Petitioner committed his crimes defined that term as follows:

"Offender" means any adult eighteen (18) through twenty-one (21) years of age or a juvenile who has been certified to stand trial as an adult, who has committed a felony offense, who has not previously been convicted of two or more felonies, and who has not been convicted of assault and battery with a dangerous weapon, aggravated assault and battery on a law officer, poisoning with intent to kill, shooting with intent to kill, assault with intent to kill, assault with intent to commit a felony, murder in the first degree, murder in the second degree, manslaughter in the first degree, manslaughter in the second degree, kidnapping, burglary in the first degree, kidnapping for extortion, maiming, robbery, child beating, wiring any equipment, vehicle, or structure with explosives, forcible sodomy, rape in the first degree or rape by instrumentation, lewd or indecent proposition or lewd or indecent act with a child under sixteen (16) years of age, use of a firearm or offensive weapon to commit or attempt to commit a felony, pointing firearms, rioting, or arson in the first degree.

22 O.S.1991, § 996.1. The Act went into effect on November 1, 1987 (Laws 1987, c. 119, § 2). From the plain language of the statute, Petitioner would be eligible for a suspended sentence, the punishment he had hoped to receive.

However, a section of the Trafficking in Illegal Drugs Act, under which Petitioner was charged, reads as follows:

A. The provisions of the Trafficking in Illegal Drugs Act, Section 2–414 et seq. of this title, shall apply to persons convicted of violations with respect to the following substances:

1. Marihuana;....

B. Except as otherwise authorized by the Uniform Controlled Dangerous Substances Act, Section 2–101 et seq. of this title, it shall be unlawful for any person to:

1. Knowingly distribute, manufacture, bring into this state or possess a controlled substance specified in subsection A of this section in the quantities specified in subsection C of this section; ....

Violation of this section shall be known as "trafficking in illegal drugs".

. . . .

D. Any person who violates the provisions of this section with respect to a controlled substance specified in subsection A of this section in a quantity specified in subsection C of this section shall, in addition to any fines specified by this section, be punishable by a term of imprisonment as follows:

1. Not less than twice the term of imprisonment provided for in Section 2–401 of this title;

. . . .

The terms of imprisonment specified in this subsection shall not be subject to statutory provisions for suspension, deferral or probation, or state correctional institution earned credits accruing from and after November 1, 1989, . . .

63 O.S.1991, § 2–415. This, too, became effective on November 1, 1987 (Laws 1987, c. 136 § 2).

■■■■ It is a classic rule of statutory construction that statutes are to be construed to determine, if possible, the intent of the Legislature, *Ritchie v. Raines*, 374 P.2d 772, 775 (Okl.Cr.App.1962), reconciling provisions, rendering them consistent and giving intelligent effect to each. *State v. Ramsey*, 868 P.2d 709, 711 (Okl.Cr.App.1993). When

there is a conflict between various statutes applying to the same situation, the more specific of the two governs. *Stiles v. State,* 829 P.2d 984, 989 (Okl.Cr.App.1992); *Bowman v. State,* 789 P.2d 631, 632 (Okl.Cr.App. 1990). This is so even if the general statute was enacted later than the specific one. *State v. Woodward,* 737 P.2d 569, 570–71 (Okl.Cr.App.1987). Here, neither statute is "general" in the sense this Court commonly uses the term: one specifically deals with sentencing provisions to be used when a defendant is convicted of drug trafficking, without regard to the class of offender; the other deals with a specific class of offender, without regard to the crime involved in the current criminal prosecution.

We have also held that when statutes are specifically designed by the Legislature to treat a given situation, that intent should be effectuated. *Luster v. State,* 746 P.2d 1159 (Okl.Cr.1987). However, this principle benefits neither party here. Both statutes deal with specific situations and both evince a specific intent by the Legislature to address specific problems.

 While it is true the trafficking act was approved June 3, 1987, and the youthful offender act was approved May 26, 1987, we do not feel this is a sufficient difference to utilize the time-honored principle the latest enactment in point of time will ordinarily prevail. *See Ex parte Higgs,* 97 Okl.Cr. 338, 341, 263 P.2d 752, 756 (1953). Although this principle can be used to determine the intent of the Legislature, rules of statutory construction remind us "that there is a strong presumption against implied repeals." *See In re Lewis Adoption,* 380 P.2d 697, 700 (Okl.1963). We do not feel a mere eight days difference between approval of the two acts is sufficient to rebut the presumption against implied repeal, especially when each act was passed in the same legislative session.

 However, we are not bound by the words of the statutes themselves. This Court has stated that to ascertain the intention of the Legislature in the enactment of statute, we may look "to each part of the statute, to other statutes upon the same or relative subjects, to the evils and mischiefs to be remedied, and to the natural or absurd

consequences of any particular interpretation." *Landrum v. State,* 96 Okl.Cr. 356, 255 P.2d 525, 529 (1953). Here, the title to the Delayed Sentencing Program for Young Adults states:

> An act relating to criminal procedure; amending [statutes not relevant here, relating to sentencing]; creating the Delayed Sentencing Program for Young Adults; providing short title; defining terms; providing procedures; specifying authority of the court; revising sentencing provisions; removing references to repealed law; [repealing other sections of law which relate to the nonviolent intermediate offender act]; providing for codification; providing for severability; and providing an effective date.

The title to the trafficking law reads:

> An act relating to criminal procedure and to public health and safety; amending 22 O.S.1981, Section 1077, which relates to bail; amending [statutes dealing with forfeiture law]; creating the "Trafficking in Illegal Drugs Act"; providing short title; providing application of act; prohibiting distribution, manufacture, importation, possession or possession with intent to manufacture of certain quantities of certain controlled substances and providing exceptions; providing penalties; excluding certain penalties from suspension, deferral or probation; excluding certain persons from eligibility for appeal bond; providing for enhancement of certain sentences for previous violations of act; [specifying apportionment of forfeiture funds, clarifying forfeiture procedure]; modifying crimes for which bail on appeal is not allowed; providing for codification; providing for severability; and providing an effective date.

From this, one can see that in creating the trafficking laws, the Legislature saw fit to modify another statute in Title 22 to comply with its intention those accused of drug trafficking should be treated differently. We find it significant that, when considering the subject of bail, legislators did not consider the age and past criminal history of the

offender, a subject which had been on their minds little more than a week before.

We also find it significant that the Legislature amended the statute defining an "offender" in 1994, adding the crime "using a vehicle to facilitate the intentional discharge of any kind of firearm in violation of Section 652 of Title 21 of the Oklahoma Statutes" to the list of crimes which would render a youthful defendant ineligible for the program. Ordinarily, we would give little weight to an act of the Legislature which occurred after this portion of Petitioner's case was completed. However, it is appropriate to use this, along with the specifically enumerated crimes which were listed in the definition of "offender" at the time Petitioner was sentenced, to apply the statutory maxim "expressio unius est exclusio alterius," (the mention of one thing in a statute implies exclusion of another). *State ex rel. Hicks v. Freeman,* 795 P.2d 110, 112 (Okl.Cr.1990); *McCullick v. State,* 682 P.2d 235, 236 (Okl.Cr. 1984). The Legislature had the opportunity to insert the drug trafficking statute as one of the enumerated crimes rendering Petitioner ineligible for sentencing under the youthful offender act. That it did not convinces us the Legislature intended a defendant convicted of drug trafficking to be sentenced under the youthful offender act, if he is otherwise eligible.

Therefore, we hold the trial court erred in ruling the provisions of the Delayed Sentencing Program for Young Adults did not apply to Petitioner. As the discussion below shows, we also hold the court did not otherwise err in denying Petitioner's motion to withdraw his guilty pleas.

Accordingly, we **REMAND** Petitioner's case to the District Court for proceedings consistent with this opinion. In so doing, we stress we do not rule on whether the court erred in not suspending Petitioner's sentence. As 22 O.S.1991, § 996.3 makes clear, the trial court has the option to defer judgment and sentence, suspend the sentence or sentence the offender to a term prescribed by law. Instead, we merely hold the trial court erred in ruling he did not have those options at his disposal.

IV.

For his second proposition, Petitioner contends his stop and arrest were pretextual and a subterfuge, rendering the subsequent search and seizure of his vehicle impermissible and unconstitutional.

As it happens, the trooper involved in this stop was the same trooper involved in the federal district court case of *United States v. Williams,* 153 FRD 684 (W.D.Okla.1994), in which Federal District Judge Wayne Alley concluded the stop of that defendant's car was not an honest enforcement of traffic laws, but was pretextual. Based on this, Petitioner claims here the stop of his car for failure to dim his headlights was pretextual; consequently, the evidence gathered as a result of his search should have been suppressed.

 The State at the district court level contended Petitioner waived his right to contest the search by entering a guilty plea. We agree. As we said in *Collins v. State,* 521 P.2d 826, 828 (Okl.Cr.App.1974):

We have consistently held that where an appeal is taken by an accused from a judgment entered upon a plea of guilty, the appeal will ordinarily present only such questions as go to the free and voluntary character of the plea, or that accused was not of competent intelligence, or was not advised of his legal rights and the nature and consequences of his plea, or as to the sufficiency of the indictment or information to confer jurisdiction, or the legality of the sentence.

*Id.* at 828 (quoting *Dunn v. State,* 488 P.2d 606 (Okl.Cr.1971)). As we note below in Petitioner's third proposition, he knowingly and voluntarily entered his pleas of guilty, which admits the facts pleaded in the information. We have repeatedly held a plea of guilty must stand when such a plea was voluntarily and knowingly given with the advice of counsel in a court of competent jurisdiction. *Id. See also Mahler v. United States,* 333 F.2d 472, 474 (10th Cir.1964), *cert. denied,* 379 U.S. 993, 85 S.Ct. 709, 13 L.Ed.2d 613 (1965) (a proper guilty plea forecloses the right to object to the manner in which he was arrested, or how the evidence

so obtained may be used against him); *Rushing v. State*, 676 P.2d 842, 849 (Okl.Cr.App. 1984); *Mack v. State*, 492 P.2d 670, 672 (Okl.Cr.App.1971); *Smith v. State*, 311 P.2d 275 (Okl.Cr.App.1957). Accordingly, we hold Petitioner by his guilty plea waived the right to contest the legality of the search and seizure of him and his vehicle.

▮▮▮ In the alternative, Petitioner contends his counsel was ineffective for not pursuing his motion to suppress before advising his client to plead guilty. In order to obtain relief based on ineffective assistance of counsel in a guilty plea situation, a petitioner must show first "counsel's representation fell below an objective standard of reasonableness." *Braun v. State*, 909 P.2d 783, 790 (Okl.Cr.App.1995) (quoting *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985)). Additionally, a petitioner must show prejudice, which in the context of a guilty plea "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* Phrased another way, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id. See also Medlock v. State*, 887 P.2d 1333, 1345 (Okl.Cr.App.1994), *cert. denied,* — U.S. —, 116 S.Ct. 310, 133 L.Ed.2d 213 (1995); *Estell v. State*, 766 P.2d 1380, 1382 (Okl.Cr.App.1988).

We have stated a petitioner in most instances must do more than simply testify that but for counsel's errors, he would not have pled guilty and would instead have insisted on going to trial. As we said in *Braun*, "[w]e do not think it would surprise courtroom observers to know most defendants who received a death sentence after a plea would seek to withdraw that plea. Accordingly, any court would tend to cast a suspicious eye toward testimony from a person whose credibility on the subject is at best suspect." *Id.* at 791. The same is true here, where Petitioner received a relatively long sentence instead of the probation he had hoped to receive.

Here, Petitioner has failed to show prejudice.

In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. See, e.g., *Evans v. Meyer*, 742 F.2d 371, 375 (C.A.7 1984) ("It is inconceivable to us ... that [the defendant] would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received"). As we explained in *Strickland v. Washington* [466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)], supra, these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the "idiosyncrasies of the particular decisionmaker." Id., 466 U.S. at 695, 104 S.Ct. at 2068.

*Id.* at 791 (quoting *Hill*, 474 U.S. at 59–60, 106 S.Ct. at 370–71). Here, we must therefore determine whether, if Petitioner had pursued his motion to suppress, it would have been successful.

▮▮▮ The trooper testified he stopped Petitioner because he failed to dim his headlights. This is a crime in Oklahoma. *See Skelly v. State*, 880 P.2d 401, 404 (Okl.Cr. App.1994) ("By definition a pretextual stop lacks probable cause and thus would be illegal. ... The officer's articulated reason for stopping the Skelly car, that the tag light was out, is a traffic violation committed in his presence. This traffic violation provided

probable cause for the initial stop."); 47 O.S. 1991, § 12–222.[4]

Despite this, Petitioner claims the stop was merely a subterfuge. We have rejected this rationale in the past when a valid traffic stop was the reason for the initial stop. *See Skelly*, 880 P.2d at 404.[5]

■ We also note the *Williams* case upon which Petitioner relies may be of questionable value in light of a more recent holding by the Tenth Circuit Court of Appeals. That court has recently abandoned its more stringent test enunciated in *United States v. Guzman*, 864 F.2d 1512 (10th Cir.1988) in favor of one allowing an officer to make a valid traffic stop. As the Tenth Circuit has now held:

[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring. It is irrelevant, for purposes of Fourth Amendment review, "whether the stop in question is sufficiently ordinary or routine according to the general practice of the police department or the particular officer making the stop." [*United States v.*] *Ferguson*, 8 F.3d [385] at 391 [ (6th Cir.1993), *cert. denied*, 513 U.S. 828, 115 S.Ct. 97, 130 L.Ed.2d 47 (1994) ] It is also irrelevant that the officer may have had other subjective motives for stopping the vehicle. Our sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated "any one of the multitude of applicable traffic and equipment regulations" of the jurisdiction. *Delaware v. Prouse*, 440 U.S. 648, 661, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660 (1979).

*United States v. Botero–Ospina*, 71 F.3d 783, 787 (10th Cir.1995).

■ Contrary to statements made in Petitioner's brief,[6] we find nothing in the record

4. This section reads:

Whenever a motor vehicle is being operated on a roadway or shoulder adjacent thereto during the times specified in Section 12–201, the driver shall use a distribution of light, or composite beam, directed high enough and of sufficient intensity to reveal persons and vehicles at a safe distance in advance of the vehicle, subject to the following requirements and limitations:

1. Whenever a driver of a vehicle approaches an oncoming vehicle within five hundred (500) feet, such driver shall use a distribution of light, or composite beam, so aimed that the glaring rays are not projected into the eyes of the oncoming driver. The lowermost distribution of light, or composite beam, specified in Section 12–221, 2., shall be deemed to avoid glare at all times, regardless of road contour and loading.

2. Whenever the driver of a vehicle follows another vehicle within two hundred (200) feet to the rear, except when engaged in the act of overtaking and passing, such driver shall use a distribution of light permissible under this chapter other than the uppermost distribution of light specified in paragraph 1. of Section 12–221.

5. We reject Petitioner's argument this was not a valid traffic stop. Petitioner contends a driver is under no obligation to dim his headlights when the terrain is hilly or curvy. He places emphasis on the last sentence of subsection 1 of this statute. The applicable statute reads:

Whenever a motor vehicle is being operated on a roadway or shoulder adjacent thereto during the times specified in Section 12–201, the driver shall use a distribution of light, or composite beam, directed high enough and of sufficient intensity to reveal persons and vehicles at a safe distance in advance of the vehicle, subject to the following requirements and limitations:

1. Whenever a driver of a vehicle approaches an oncoming vehicle within five hundred (500) feet, such driver shall use a distribution of light, or composite beam, so aimed that the glaring rays are not projected into the eyes of the oncoming driver. *The lowermost distribution of light, or composite beam, specified in Section 12–221, 2., shall be deemed to avoid glare at all times, regardless of road contour and loading.*

47 O.S.1991, § 12–222 (emphasis added). Contrary to Petitioner's argument, we do not read this last sentence as an exception to the obligation to dim his lights when approaching traffic. Rather, we read it to create a presumption that if a driver has his low beams on when approaching oncoming traffic, those low beams will be deemed sufficient, even if, because of road contours, the beams would strike an approaching vehicle higher than they would if the vehicles met on a flat road.

6. We are particularly intrigued by counsel's offer of proof at the hearing on Petitioner's motion to withdraw his guilty plea. There, counsel stated his offer would be

that if Trooper Plunkett were to testify and if he were to truthfully testify, his testimony would be on the night, early morning hours of

indicating this was a subterfuge stop. Despite Petitioner's repeated assertions to the contrary, the trooper testified he stopped the van, intending to give a warning for failure to dim bright lights. He further testified that, although there had been a "manual" dealing with drug interdiction, that manual was nothing more than "several sheets of paper put together by a First Lieutenant who had never made a drug arrest in his life, who was on a teaching circuit." (7–25 Tr. 9). The trooper emphatically testified he did not have a copy of the "manual," and never had; further, he did not use it because it was not endorsed by the Department of Public Safety. (7–25 Tr. 9, 10, 12, 13, 19). Petitioner presented nothing at the hearing showing the trooper's statements were not true.

We therefore find nothing improper with the initial stop. We now turn to whether the officer had probable cause to search the van.

 After the officer stopped Petitioner's van, he noticed a very strong smell of marijuana even before he had completed his approach to it. We have held officers who were where they had a right to be who detected the distinct odor of marijuana emanating from a vehicle had probable cause to believe the vehicle contained contraband, justifying a search in that vehicle. *Cole v. State*, 728 P.2d 492, 494 (Okl.Cr.App.1986) (citing *United States v. Johns*, 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985)). *See also Ferguson v. State*, 520 P.2d 819 (Okl.Cr.App. 1974). *Cf. Venable v. State*, 567 P.2d 1006, 1008 (Okl.Cr.App.1977) (Testimony relating to crime was not obtained as result of illegal search and seizure, but resulted from observations made by police officer who observed the defendant violating section 12–213 of Title 47, requiring a lamp or flag to be displayed on a projecting load). We also note a drug dog was called in, and the dog alerted to the presence of marijuana, providing even more probable cause to search the van.

Accordingly, there is nothing improper about the subsequent search of the van.

As Petitioner would not have been successful even had he pursued his motion to suppress, he cannot show prejudice. Accordingly, he has failed to show his attorney was incompetent, and this proposition is without merit.

## V.

 In his third proposition, Petitioner contends the trial court failed to properly advise him of the nature of the charges, as well as the elements of the three alleged offenses; therefore, his guilty pleas were not a knowing and voluntary admission. He also contends the affidavit giving a factual basis for the pleas was insufficient.

The trial court used a summary of facts guilty plea form. No court reporter was present; the form shows the court reporter was waived. The form shows Petitioner was informed of the charges against him, and the range of punishment for each count. It also shows he had never been treated for a mental illness; and his attorney had no reason to believe his client was not mentally competent or capable of understanding the nature of the charges against him. He was also advised of his rights, and that those would be waived by his pleading guilty. The form also shows Petitioner talked over the charge(s) with his lawyer, understood his rights and had his advice in the matter. Petitioner gave the following factual basis for the plea:

I was driving a vehicle with about 350 lbs of Marijuana in it. I did not have a tax stamp for the Marijuana.

This is the first time I ever did anything like this.

The record shows this statement was completed in the interpreter's handwriting. The interpreter also signed the guilty plea form.

 Based on this record, we find Petitioner was competent. As this Court

---

September the 2nd, 1992, he pursued the defendant's vehicle because the defendant was a Hispanic male traveling in a van in the early morning hours on the northeast Interstate system of Oklahoma City, and that he pursued the defendant with the intent to stop him and check him out for drugs, pursuant to the Oklahoma Highway Patrol Drug Interdiction Traffic Stop Manual policy. (7–25 Tr. 4). That is not an offer of proof; that is nothing more than counsel's opinion the officer lied under oath when he testified to the contrary.

said decades ago, a plea of guilty should be entirely voluntary, and should be made by one competent to know the consequences of his plea; a court should not accept the plea until after the defendant has been fully advised by the court of his rights and the consequences of his plea. *See Ex parte Meadows,* 70 Okl.Cr. 304, 106 P.2d 139 (1940); *Howington v. State,* 30 Okl.Cr. 243, 235 P. 931, 933 (1925); *Mullen v. State,* 28 Okl.Cr. 218, 230 P. 285, 289–90 (1924). As we said in *Howington:*

> The uniform holding of the courts is that, in capital cases, a plea of guilty can only be entered after the defendant has been fully advised by the court of his rights and the consequences of his plea, and, where it appears on appeal from a judgment of conviction that the defendant has been denied a right guaranteed by the Constitution, such showing requires a reversal, unless the record shows that the right was waived, or that no injury could have resulted to the accused by reason of such denial.

*Howington,* 235 P. at 933. It is clear this requirement reaches beyond capital cases.

Concerning the factual basis, we would have preferred a more thorough one, but the one given covers all three crimes. There is sufficient information here from which the district court could conclude it was not sending an innocent man to prison. *See United States v. Maez,* 915 F.2d 1466, 1468 (10th Cir.1990), *cert. denied,* 498 U.S. 1104, 111 S.Ct. 1005, 112 L.Ed.2d 1087 (1991) (for a plea to be valid it "must be based on the defendant's intelligent conclusion that the record before the judge contains strong evidence of actual guilt"); *United States v. Pollard,* 959 F.2d 1011, 1021 (D.C.Cir.), *cert. denied,* 506 U.S. 915, 113 S.Ct. 322, 121 L.Ed.2d 242 (1992) (a plea is acceptable so long as the record contains "adequate evidence of actual guilt"). *See also Berget v. State,* 824 P.2d 364, 372 (Okl.Cr.App.1991), *cert. denied,* 506 U.S. 841, 113 S.Ct. 124, 121 L.Ed.2d 79 (1992) (when defendant discusses plea with attorney, law will presume defendant understood nature of charges when defendant fails to present evidence otherwise); *May v. State,* 788 P.2d 408, 412 (Okl.Cr.App. 1990) (*King v. State,* 553 P.2d 529 (Okl.Cr. App.1976) does not require trial court to explain the elements of the offense to a defendant).

Petitioner then alleges he was misled by his attorney. He claims his attorney told him that if he pled guilty, he would be sent to the RID program (a boot-camp-type program set up for first-time offenders, discussed above); and if he successfully completed it, he would be allowed to have a deferred or a suspended sentence.

Petitioner has failed to make an adequate record in support of his allegation. He admitted there was no plea agreement, and he entered a blind plea. He also admitted that the court informed him of the range of punishment, and told him he could be sentenced to any term of imprisonment within that range. He also told the judge he was not coerced or promised anything in exchange for his plea. On questioning from the judge, Petitioner admitted he was seeking to withdraw his guilty plea because he did not like the sentence he received. Petitioner's interpreter gave conflicting evidence: she told the court the attorney told Petitioner if he pled guilty he would go through RID and get a suspended sentence. However, she also admitted she was present when the attorney went through the guilty plea form, where the attorney told Petitioner there were no agreements, and Petitioner could be sentenced within the range of punishment listed. It is also interesting to note that, despite the opportunity to do so, Petitioner did not subpoena or question his first attorney in support of his complaint.

Based on the evidence presented, it appears clear Petitioner sought to withdraw his guilty pleas because he did not like the sentence he received. This is not a satisfactory basis for allowing a plea to be withdrawn. *See Worthen v. Meachum,* 842 F.2d 1179, 1184 (10th Cir.1988) (expectation of parole based on bad guess of attorney does not render plea involuntary). Based on the record, we hold Petitioner has failed to show his plea was not intelligently and voluntarily entered. This proposition is without merit.

### VI.

Accordingly, the judgment of the trial court denying Petitioner's motion to withdraw his plea is **AFFIRMED.** However, the case is **REMANDED** to allow the court to consider the sentencing options available under 22 O.S.1991, § 996.3.[7]

JOHNSON, P.J., CHAPEL, V.P.J., and LANE and STRUBHAR, JJ., concur.

---

7. The State filed a motion to cross-reference this case with PC–95–508, the case filed by Appellant which resulted in his being granted an appeal out of time. Petitioner joined in that request. Accordingly, the State's motion to cross-reference this appeal with records in PC–95–508 is **GRANTED.** Records from that appeal were used in determining this appeal.