2004 OK CR 5

**STATE of Oklahoma, Appellant,**

v.

**Melvin Henry GOINS, Appellee.**

**No. S 2003–61.**

Court of Criminal Appeals of Oklahoma.

Feb. 4, 2004.

Petitioner should revise that Brief to conform to the guidelines set forth above.

Francis R. Courbois, Oklahoma City, OK, Attorney for Defendant in District Court.

F. Pat Versteeg, Assistant District Attorney, Sayre, OK, Attorney for State in District Court.

F. Pat Versteeg, Assistant District Attorney, Sayre, OK, Attorney for Appellant on Appeal.

Francis R. Courbois, Oklahoma City, OK, Attorneys for Appellee on Appeal.

## OPINION

LILE, Vice Presiding Judge.

¶1 Melvin Henry Goins was charged with Trafficking in Illegal Drugs (Marijuana) in violation of 63 O.S.2001, § 2–415 in the District Court of Beckham County, Case No. CF–2002–790. Goins filed a motion to suppress the evidence alleging, generally, that the search of his vehicle was in violation of the Fourth Amendment to the United States Constitution. A hearing was held before the Honorable Charles L. Goodwin.

¶2 Judge Goodwin ruled that the evidence must be suppressed, because the search was in violation of the Fourth Amendment. The State asserts that it cannot proceed without the evidence and now appeals to this Court based on 22 O.S.Supp.2002, § 1053(5). Section 1053 provides, in part, that the State may appeal,

Upon a pretrial order, decision, or judgment suppressing or excluding evidence

where appellate review of the issue would be in the best interests of justice.

¶ 3 We find that the State's appeal is proper and review of this issue is in the best interests of justice. Furthermore, this case presents an issue of first impression in this State.

¶ 4 On April 21, 2002, Melvin Henry Goins, driving a motor home, was stopped by Oklahoma State Trooper Ty Williamson for following too closely in violation of 47 O.S.2001, § 11–310. Goins accompanied Williamson to the patrol vehicle where Williamson issued Goins a warning citation, returned his papers to him, and told Goins, "that is all I need."

¶ 5 Goins began to exit Williamson's vehicle, and Williamson asked Goins if he could ask him something before he left. Goins replied, "Sure." Williamson asked Goins if he was carrying any drugs, guns, large amounts of money or anything illegal in the motor home. Goins answered in the negative. Williamson then asked if he could search the vehicle and Goins said that he could. Troopers searched Goins' motor home and discovered about three hundred (300) pounds of marijuana.

¶ 6 In suppressing the evidence, the trial court relied on *McGaughey v. State*, 2001 OK CR 33, 37 P.3d 130, and *United States v. McSwain*, 29 F.3d 558 (10th Cir. 1994). The trial court stated, "when the purpose of the stop is terminated, ... then any further search or request to search is illegal. That's illegal under McGaughey and McSwain." The State argues that the trial court's reliance on these cases is misplaced and its ruling is in error.

¶ 7 The trial court did not rule on the validity of the stop, nor did Goins assert that the initial stop was invalid. We presume, for the purpose of this analysis, that the initial stop was valid. Our review of the trial court's decision is based on an abuse of discretion standard, which has been defined as a clearly erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts presented. *State v. Love*, 1998 OK CR 32, ¶ 2, 960 P.2d 368, 369.

¶ 8 The two cases relied on by the trial court are based on specific fact situations distinguishable from the facts of this case. In *McGaughey*, this Court held that once an officer realizes that his reason for a traffic stop is mistaken, any further detention violates the Fourth Amendment, absent specific circumstances. *McGaughey*, 37 P.3d at 137, 144. The facts of the relevant search reveal that McGaughey was stopped because the trooper could not see his taillights; however, once the stop was made, the trooper saw that the taillights were working. This Court ruled that the trooper should have terminated the stop.

¶ 9 Similar facts occurred in *McSwain.* A Utah Highway Patrol Trooper stopped a vehicle because he could not read the expiration date on the temporary registration sticker in the rear window. Once the vehicle was stopped, the trooper could see that the registration was valid. Ultimately, the trooper asked for consent to search, which was given, and cocaine was discovered in the vehicle.

¶ 10 The Courts in each of these cases held that once the troopers approached the vehicles and observed that there was no violation, the purpose of the stop was satisfied. Therefore, the actions by the trooper in extending the traffic stop to ask for identification, driver's license, etc. exceeded the limits of lawful investigative detention and violated the Fourth Amendment. *McGaughey*, 37 P.3d at 140–41; *McSwain*, 29 F.3d at 561–62.

¶ 11 Both cases are distinguishable from the case at hand. The holdings of *McSwain* and *McGaughey* were based on a specific set of facts where the vehicle was stopped based on a mistaken belief that the vehicle did not comply with the law or that the driver had violated or was violating the law. A detention that continues beyond the point where the officer determines that the stop was made on a mistaken belief cannot be considered reasonably related in scope to the initial justification for the stop. *McGaughey*, 37 P.3d at 137; *McSwain*, 29 F.3d at 561–62.

¶ 12 In *McGaughey* and *McSwain*, the officer continued the detention after it was determined that the stop was made on a mistaken belief. However, even in *McGaughey*, this Court acknowledged that, if the stop is

based on an observed traffic violation, which is not made under mistaken belief, then the traffic stop is valid under the Fourth Amendment. *McGaughey*, 37 P.3d at 136; See also *Lozoya v. State*, 1996 OK CR 55, ¶ 32, 932 P.2d 22, 32.

¶ 13 Two different situations may support further police actions after an initial valid stop is concluded. On this point the Tenth Circuit has stated:

> Lengthening the detention for further questioning beyond that related to the initial stop is permissible in two circumstances. First, the officer may detain the driver for questioning unrelated to the initial stop if he has an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring. Second, further questioning unrelated to the initial stop is permissible if the initial detention has become a consensual encounter.

*United States v. Hunnicutt*, 135 F.3d 1345, 1349 (10th Cir.1998)[internal citations omitted].

¶ 14 In *Hunnicutt*, a police officer stopped a vehicle for weaving across the shoulder line and the centerline of his lane of travel. Hunnicutt took 10–12 seconds to stop. When stopped, Hunnicutt produced a license, but no insurance verification. He claimed to be buying the car from someone else, but the name he gave did not match the registered owner of the car. Computer checks also showed that the Hunnicutt's driver's license had been suspended. Hunnicutt and the passengers told inconsistent stories about their travel destinations. Hunnicutt denied that there were any illegal substances or weapons in the car. A drug dog was called and a large quantity of methamphetamine was found.

¶ 15 The Court found that the officer formed an "objectively reasonable and articulable suspicion" of illegal activity to support the extension of the traffic stop. The Court reasoned that because the officer asked about guns and drugs before returning the driver's license, the stop must have been supported by the reasonable suspicion. *Id.* The Court found that the officer's suspicion was properly based on "a driver who had no proof that he was the vehicle's owner, no

registration, and no proof he was otherwise authorized to operate the vehicle." The driver failed to stop promptly, and, after the stop, the passengers repeatedly moved back and forth and leaned over. The totality of the circumstances supported further detention. *Id.*

¶ 16 We relied on *Hunnicutt* to support the extension of a valid traffic stop based on an "objectively reasonable and articulable suspicion" in *State v. Paul*, 2003 OK CR 1, 62 P.3d 389. However, this Court has yet to publish a case on the second exception, a driver's voluntary consent to an extension of the traffic stop; therefore, we look to other jurisdictions for guidance.

¶ 17 The Tenth Circuit, in *United States v. Hernandez*, 93 F.3d 1493, 1498 (10th Cir.1996), discussed the second justification for the extension of a valid stop; the consensual encounter. The *Hernandez* case is instructive on this specific issue and is indistinguishable from the case at bar. In *Hernandez*, the Court held that "a traffic stop may become a consensual encounter if the officer returns the license and registration and asks questions without further constraining the driver by an overbearing show of authority." *Id.*, 93 F.3d at 1498. In *Hernandez*, Oklahoma Highway Patrolman Dennis Flowers, stopped a vehicle for speeding. After writing a warning citation and checking the validity of the driver's license and registration, the officer returned the Hernandez's documents to him and told him he was free to go. As Hernandez turned to get out of the patrol car, the officer inquired if he could ask a few questions. Hernandez said he could. The officer asked about travel itinerary and whether there was any contraband in the car. Hernandez said there was none and consented to a search of the car. The officer testified that he was "fishing." A subsequent search revealed sixty-five pounds of pseudoephedrine (a precursor used in the manufacture of methamphetamine) and $1800.

¶ 18 The Court held that the driver's consent was voluntary applying the test of whether a reasonable person in the driver's position would believe he was not free to leave. *Hernandez*, 93 F.3d at 1499. The

Court in *Hernandez* determined that, "There was no evidence that Flowers used a commanding or threatening manner or tone of voice, displayed a weapon, or touched Hernandez.... There was no evidence that Flowers' manner was accusatory, persistent, and intrusive." *Id.*

■ ¶ 19 This Court uses the same test for the voluntariness of consent as is used in federal courts; the test for voluntariness is to be judged from a totality of the circumstances. *Van White v. State*, 1999 OK CR 10, ¶ 45, 990 P.2d 253, 267; *See Ohio v. Robinette*, 519 U.S. 33, 40, 117 S.Ct. 417, 421, 136 L.Ed.2d 347 (1996), *citing Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).[1] This Court has consistently held that voluntary consent is a valid exception to the requirement of a search warrant. *Case v. State*, 1974 OK CR 27, ¶ 7, 519 P.2d 523, 524. When the State claims that there is consent, the proof offered by the State must be "clear and convincing that the waiver was a free and voluntary act." *Id.* [citations omitted]

¶ 20 In a more recent Tenth Circuit case, *United States v. West*, 219 F.3d 1171 (2000), the Court discussed consensual encounters stating that,

An officer may extend a traffic stop beyond its initial scope if the suspect consents to further questioning or if the detaining officer has a particularized and objective basis for suspecting the person stopped of criminal activity. A traffic stop may become a consensual encounter, requiring no reasonable suspicion, if the officer returns the license and registration and asks questions without further constraining the driver by an overbearing show of authority. "A consensual encounter is the voluntary cooperation of a private citizen in response to non-coercive questioning by a law enforcement officer."... Whether an encounter can be deemed consensual depends on "whether

the police conduct would have conveyed to a reasonable person that he or she was not free to decline the officer's requests or otherwise terminate the encounter."... An officer is not required to inform a suspect that he did not have to respond to his questioning or that he was free to leave. Therefore, an unlawful detention occurs only when the driver has an "objective reason to believe he or she is not free to end the conversation with the officer and proceed on his or her own way." *Id.* at 1176–77. [internal citations omitted].

This Court has never held that an officer must have a reasonable and articulable suspicion before he may ask for consent after he has already engaged in a valid traffic stop. We have only held that consent must be voluntary.

■ ¶ 21 Although this Court may construe Oklahoma's Constitutional protections from unlawful search and seizure more narrowly than those found in the United States Constitution, there is no logical reason to do so here. To do so could result in a situation where an Oklahoma Highway Patrol Trooper can comply in every respect with the provisions of the United States Constitution resulting in the admission of the evidence in a federal court in Oklahoma but resulting in the suppression of the same evidence in an Oklahoma state court. Such circumstances contribute to a lack of confidence in the State's criminal justice system in the law enforcement community and among the citizens of this state. Therefore, we adopt the long standing rule that a valid stop may be extended if the encounter becomes consensual.

¶ 22 The issues, in this case, are whether there was voluntary consent to the detention beyond the traffic stop or whether the officer had an articulable reasonable suspicion for detaining the driver beyond the stop. However, the trial court's ruling precluded a decision on these issues.[2] Therefore, we remand

1. The United States Supreme Court, in *Robinette*, declined to establish a bright line rule that an officer must tell a driver that he is free to go, before consent is deemed voluntary.

2. In its Brief, the State argues that the officer had an articulable reasonable suspicion for extending the stop. "[B]ases for this suspicion may include inconsistent statements about destination, and questionable proof of ownership or authority to operate the vehicle." *State v. Paul*, 62 P.3d at 389. Other bases include a failure to stop promptly and extreme and continued ner-

this case back to the trial court for further proceedings consistent with this opinion.

## DECISION

¶ 23 The ruling of the trial court suppressing the evidence in this case is **VACATED** and this case is **REMANDED** to the trial court for further proceedings consistent with this opinion.

JOHNSON, P.J., Specially Concurs.

LUMPKIN and STRUBHAR, JJ., Concur.

CHAPEL, J., Concur in Results.

JOHNSON, Presiding Judge, Specially Concurring.

¶ 1 I specially concur in the opinion as written herein. While the opinion is well written I need to point out my position as it relates to this particular case. This Court, in *McGaughey v. State*, 2001 OK CR 33, 37 P.3d 130, indicated when a stop is terminated further search or request is illegal. This case does not make a change in Oklahoma law.

¶ 2 This state may have more protection under the Oklahoma Constitution than the United States Constitution. This may well be my position as it relates to search and seizure. When the transcript is read in this case it is clear that there was consent and the consent to search was lawful. There is no evidence of force or a violation of the terms of the consent. The consent must be free and voluntary and not coerced in any way.

¶ 3 My position has not changed. A reasonable stop with proper questions, together with a citation and then a statement by the officer that the party is free to leave is a proper procedure. If after this, an officer asks for consent to search without any coer-

cion and this is given freely and voluntarily, then the consent does not violate the Oklahoma or United States Constitutions.

CHAPEL, Judge, Concurring in Result.

¶ 1 I concur in the result of today's decision and with the Court's conclusion that the trial court erred in its determination that *McGaughey v. State*[1] and *United States v. McSwain*[2] compelled the suppression of the drug evidence in this case. *McGaughey* and *McSwain* are both directed at a very specific and relatively rare factual situation, i.e., where an officer initiates a traffic stop based upon a reasonable but *mistaken* belief that an infraction of law has occurred or is occurring, only to discover, before interaction with the driver, that this initial perception was wrong (in *McGaughey* because the taillights were fully operational, in *McSwain* because the vehicle's temporary registration was valid). Because the officers in these two cases continued to detain the drivers after realizing that their original reason for the stop was invalid, both cases involved illegal detentions and invalid stops.

¶ 2 Even Goins does not contend that the stop of his vehicle for following too closely was invalid or based upon a mistake. Because his case does not involve a mistaken stop, *McGaughey* and *McSwain* are simply inapplicable. I fully agree with the Court's central analysis of this issue. I disagree with its pronouncement of the standard of review and with its seeming resolution of a factual question that should be left to the trial court in the first instance.

¶ 3 The trial judge was quite clear that he was granting the defendant's suppression motion based upon his interpretation of *McGaughey* and *McSwain*, i.e., that under these two cases, once "the purpose of the stop is terminated, . . . any further search or request to search is illegal." The court was

vousness (*United States v. Hunnicutt*, 135 F.3d at 1349; *United States v. West*, 219 F.3d at 1178), and the presence of short-range, two-way radios or a cell phone; suspicious destination, way points or origins of travel. *United States v. Williams*, 271 F.3d 1262, 1269–70, (10th Cir. 2001). These individual items, as well as the officer's training and experience in detecting drug traffickers, are reviewed as part of the totality of the circumstances. *Williams*, 271 F.3d at

1268. This Court has relied on these types of factors to support the extension of a valid stop so that a drug dog could be summoned to the scene. *See State v. Paul*, 62 P.3d at 390.

1. 2001 OK CR 33, 37 P.3d 130.

2. 29 F.3d 558 (10th Cir.1994).

unwilling to even hear evidence on the factual question of whether Goins voluntarily consented to the search of his motor home. Hence the court suppressed the evidence based upon its *legal* conclusion that *McGaughey* and *McSwain* forbid an officer to seek or obtain consent to search a vehicle after that officer has "terminated" or "resolved" the original purpose of the stop.[3] This is a purely legal conclusion to which we owe no deference. We should be addressing it *de novo*, rather than under the abuse of discretion standard invoked by the Court.

¶4 I agree with the Court that the current case, unlike *McGaughey* and *McSwain*, involves a valid traffic stop and that the officer's request to search Goins's motor home occurred after the original purpose of the stop had been resolved. I likewise agree that officers in this situation can only extend their encounter with a citizen driver based upon one of the following justifications: (1) where an objectively reasonable and particularized suspicion regarding a separate offense has already emerged; and (2) where the encounter becomes consensual.[4] Either of the reasons is sufficient to continue the encounter.

¶5 Finally, I agree with the Court's decision to remand this case for further factual determination by the trial court. The trial court must decide whether Goins voluntarily consented to the search of his motor home, and if not, whether his continued detention was justified by the officer's objectively reasonable and particularized suspicion that he was committing some other offense. I also agree that *United States v. Hernandez*,[5] along with the other cases cited by the Court, appears highly instructive in resolving the issues before the trial court. I do not, however, think we should describe *Hernandez* as "indistinguishable from the case at bar," since we should leave the disputed factual question of what actually occurred in this case to be resolved, in the first instance, by the trial court.

---

3. There is no disagreement between the parties about the fact that before any request for consent to search the motor home, Officer Williamson gave Goins a verbal and written warning about not following too closely, handed back his papers, told him "that is all I need," and wished him a "safe day." The parties likewise agree that at that point, the original purpose of the stop, i.e., Goins following too closely, had been fully resolved.

4. It should be noted that a continuation of the encounter based solely on the driver's voluntary consent does not technically involve any further "detention," as the Court's opinion suggests in its final paragraph, since, by definition, the driver is free to go at that point.

5. 93 F.3d 1493 (10th Cir.1996).