**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 18 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

WILLIAM G. WEST,

      Defendant - Appellant.

No. 99-4135

---

Appeal from the United States District Court
for the District of Utah
(D.C. No. 99-CR-6-B)

---

Alan P. Caplan, San Francisco, California, for Defendant-Appellant.

Laurie J. Sartorio, Assistant United States Attorney, Salt Lake City, Utah, (Paul M. Warner, United States Attorney, with her on the brief) for Plaintiff-Appellee.

---

Before **EBEL, PORFILIO, and MAGILL,**[*] Circuit Judges.

---

**MAGILL,** Circuit Judge.

---

      William G. West was indicted for one count of possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).

---

[*]Honorable Frank Magill, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

The indictment was subsequently dismissed and West pled guilty to possession of amphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). West appeals the district court's[1] denial of his motion to suppress evidence obtained as a result of the search of his vehicle.[2] We affirm the judgment of the district court.

## I. BACKGROUND

On February 19, 1997, Deputy Sheriff Phil H. Barney was on routine patrol on I-70 near Richfield, Utah. Deputy Barney had a dispatcher trainee, Candice Baker, with him. At milepost 29 at about 1319 hours, Deputy Barney stopped a green Pontiac which was going eastbound at eighty miles per hour in a seventy-five miles per hour zone.

After stopping the Pontiac, Deputy Barney approached the driver's side of the car, intending to issue the driver a speed warning.[3] West was the only

[1]The Honorable Dee Benson, United States District Judge for the District of Utah.

[2]The motion to suppress was litigated under the case number of first indictment, Case Number 2:97-CR-00080-001-B. In order to combine the records of the two cases, we grant West's motion to consolidate Case Number 2:97-CR-00080-001-B with the current case, Case Number 2:99-CR-00006-001-B.

[3]Deputy Barney had a video camera mounted on his vehicle that taped the stop of West. Although the video provides a relatively clear view of the stop, the camera's audio recorder was not properly functioning. On appeal, West claims that the video supports his version of the events and urges the court to review the video. Contrary to the

(continued...)

occupant in the vehicle. Deputy Barney asked West for his driver's license and vehicle registration. West provided a valid license and a rental agreement for the vehicle in his name. Deputy Barney observed that West was very nervous and his hands were shaking. Deputy Barney also detected a distinctive odor of air freshener, which Deputy Barney suspected might be an effort by West to mask a controlled substance.

Deputy Barney took West's documents to his vehicle. Deputy Barney ran a background check on the Pontiac and a criminal history check of West. An answer came back on the checks indicating that the vehicle was clear, and while West was not currently wanted, he did have a criminal history for property crimes, burglary, and an assault. Deputy Barney had Baker prepare a warning citation for speeding. Deputy Barney returned to West's vehicle and advised West that he was only giving him a warning, with no court appearance or fine required. Deputy Barney gave the warning ticket, driver's license, and rental agreement back to West in sequence. During this time, Deputy Barney asked West about his travel plans. West said that he had been in Las Vegas and was returning to Minnesota. Deputy Barney observed that West continued to shake in a nervous manner. Deputy Barney was standing back from the vehicle and was bent over towards the

---

[3](...continued)
defendant's claims, a review of the video supports the district court's version of the traffic stop.

driver's side window. Because of his suspicion that West might be involved with drugs, Deputy Barney asked West if he had any firearms with him. West replied that he did not. Deputy Barney then asked West if he was transporting drugs and West said that he was not. At this point, Deputy Barney observed that West was shaking very visibly. Deputy Barney asked West if he could look in the vehicle. West paused for a period of time and then said yes.

Deputy Barney asked West to get out of the vehicle and step to the back and side of the vehicle. Deputy Barney performed a quick patdown of West. Deputy Barney then conducted a search of the inside of the vehicle. As he did so, he could detect a strong odor of air freshener. Deputy Barney then took the vehicle keys and opened the trunk of the vehicle. At that time, Deputy Barney could detect the distinct odor of methamphetamine. Deputy Barney observed two bags and a briefcase in the trunk. Deputy Barney asked West whose bags they were and West replied that all three bags were his. Deputy Barney asked if he could look in the briefcase, which was locked, and West said no. West, however, did not otherwise ask Deputy Barney to stop his search or restrict the areas in which West could search. Deputy Barney took the locked briefcase and put it in the patrol car so it would not be accessible to West during the search.

Deputy Barney returned to the trunk of West's vehicle. Deputy Barney picked up a zippered bag that had a lock on it but that was not fully closed. The

bag was locked and zippered but had a three inch gap. Deputy Barney could detect the distinct sour odor of methamphetamine emanating from the bag. Deputy Barney put his fingers in the three inch gap and could feel smooth plastic and a package which Officer Barney believed contained methamphetamine. West did not object to Deputy Barney's handling of the zippered bag and the lock on the bag was not forced. The briefcase, previously placed in Deputy Barney's vehicle, was placed back in the trunk of West's vehicle. Deputy Barney arrested West and impounded his car.

On February 26, 1997, West was charged with possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). After chemical analysis by the government, it was determined that the substance seized was not methamphetamine but amphetamine, a separately scheduled controlled substance. The indictment was subsequently dismissed and a felony information was filed charging West with possession of amphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). West filed a motion to suppress the evidence taken from his vehicle by Deputy Barney during the traffic stop. The matter was referred to Magistrate Judge Boyce who entered a Report and Recommendation on June 1, 1998, recommending that the defendant's motion be denied. On July 10, 1998, the district court adopted Magistrate Boyce's report in its entirety and denied West's motion to suppress. West entered into a plea

agreement with the government and was sentenced to eighty-seven months imprisonment, three years of supervised release, and a fine of $15,000. Subsequently, West filed the present appeal.

## II. ANALYSIS

West offers the following reasons why the seizure of the amphetamine must be suppressed: (1) he was unlawfully seized after being stopped for speeding; (2) he did not voluntarily consent to the warrantless search of his rental car; and (3) even if he did voluntarily consent to the search of the car, the consent was withdrawn or revoked prior to the seizure of the amphetamine. In reviewing the denial of a motion to suppress, we accept the factual findings of the district court unless they are clearly erroneous. See United States v. Wood, 106 F.3d 942, 945 (10th Cir. 1997). The evidence is viewed in the light most favorable to the district court's determination. See id. The ultimate determination of reasonableness under the Fourth Amendment, however, is a question of law which is reviewed de novo. See id.

### A. Initial Stop and Detention

West's first argument is that Deputy Barney's questions unlawfully exceeded the scope of the traffic stop, and that he was unlawfully detained after the completion of the traffic stop. A routine traffic stop is a seizure under the

Fourth Amendment. See id. at 945. It is characterized as an investigative detention, the reasonableness of which is judged under the principles of Terry v. Ohio, 392 U.S. 1, 19-20 (1968). See id.

The Terry inquiry involves a two-part test. See id. The first part of the test analyzes whether the stop was justified at its inception. See id. In this case, there is no dispute about the first part because West does not challenge the district court's finding that probable cause existed to stop him for speeding. The second part of the test analyzes "whether the officer's actions during the detention were reasonably related in scope to the circumstances which justified the interference in the first place." Id. A driver must be permitted to proceed after a routine traffic stop if a license and registration check reveal no reason to detain the driver unless the officer has reasonable articulable suspicion of other crimes or the driver voluntarily consents to further questioning. See United States v. Hernandez, 93 F.3d 1493, 1498 (10th Cir. 1996). West argues that he was unlawfully detained because Deputy Barney did not immediately hand all of the papers back to West, and, without reasonable suspicion, questioned West for approximately fifteen seconds before all of the papers had been returned. The district court found that as Deputy Barney was handing the papers back to West, he informed West that he was issuing him a warning ticket for speeding, that there would be no fine associated with the ticket, and that the traffic infraction

would not appear on his record. The court also found that Deputy Barney engaged in conversation regarding West's travel plans. West argues that this questioning was improper and exceeded the scope of the traffic stop. However, questions about travel plans are routine and "may be asked as a matter of course without exceeding the proper scope of a traffic stop." Id. at 1499. The district court found that Deputy Barney returned all of West's papers before questioning West about drugs or seeking consent to search. Deputy Barney, therefore, did not exceed the permissible scope of the traffic stop. See United States v. Anderson, 114 F.3d 1059, 1064 (10th Cir. 1997).

After the initial justification for the stop was legally concluded, Deputy Barney continued to question West. An officer may extend a traffic stop beyond its initial scope if the suspect consents to further questioning or if the detaining officer has a particularized and objective basis for suspecting the person stopped of criminal activity. See United States v. Patten, 183 F.3d 1190, 1193 (10th Cir. 1999). A traffic stop may become a consensual encounter, requiring no reasonable suspicion, if the officer returns the license and registration and asks questions without further constraining the driver by an overbearing show of authority. See Hernandez, 93 F.3d at 1498. "A consensual encounter is the voluntary cooperation of a private citizen in response to non-coercive questioning by a law enforcement officer." Id. Whether an encounter can be deemed consensual

depends on "whether the police conduct would have conveyed to a reasonable person that he or she was not free to decline the officer's requests or otherwise terminate the encounter." Id. An officer is not required to inform a suspect that he did not have to respond to his questioning or that he was free to leave. See Patten, 183 F.3d at 1194. Therefore, an unlawful detention occurs only when the driver has an "objective reason to believe he or she is not free to end the conversation with the officer and proceed on his or her own way." Hernandez, 93 F.3d at 1498.

West argues that Deputy Barney addressed him in a controlling and aggressive posture by standing extremely close to West's car and leaning forward so that the car door could not open without hitting Deputy Barney. While "[a] 'coercive show of authority, such as the presence of more than one officer, the display of a weapon, physical touching by the officer, or his use of a commanding tone of voice indicating that compliance might be compelled' may suggest that a detention has not ended," Anderson, 114 F.3d at 1064 (quoting United States v. Turner, 928 F.2d 956, 959 (10th Cir. 1991)), Deputy Barney's actions were in no way coercive or aggressive. The district court found that after Deputy Barney returned West's documents to him he addressed West "without any additional detention or restriction." The court found that Deputy Barney did not "hold, detain or block the vehicle." There was no evidence that Deputy Barney used a

-9-

commanding or threatening manner or tone of voice, displayed a weapon, or touched West. See Hernandez, 93 F.3d at 1499. Moreover, Deputy Barney likely stood relatively close to the vehicle to avoid being hit by traffic on the busy interstate on which West was stopped. In any case, we find that the district court did not err in finding that the lawful scope of the stop was not exceeded and that the encounter between West and Deputy Barney was consensual.

**B. Consent to Search**

West next argues that even if the post-stop conversation was consensual, he did not consent to West's search of the car and, even if he did consent to a search of the car, did not consent to a search of the trunk. Whether a party has voluntarily consented to a search is a question of fact that the district court must evaluate in view of the totality of the circumstances. See Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). Because voluntariness is a question of fact, the court must accept the district court's finding unless it is clearly erroneous. See United States v. Davis, 197 F.3d 1048, 1050 (10th Cir. 1999).

The district court stated that while West did hesitate initially[4] when asked if he would consent to Deputy Barney searching the vehicle for firearms or drugs, "there were no threats made, no cajoling, or demand of defendant to obtain

---

[4]Deputy Barney testified that "I then asked if I could look in the vehicle and he paused for a while and then he finally said yes."

-10-

consent. No pressure was applied by Deputy Barney against the defendant." The district court found nothing ambiguous or equivocal in West's affirmative response to Deputy Barney's request for permission to search the car. We find nothing in the record to indicate that the district court erred in finding that West voluntarily consented to the search of his car.

Furthermore, the scope of the consent, at least initially, extended to the trunk of the car. The scope of the consent to search is limited by the breadth of the consent given. See United States v. Pena, 920 F.2d 1509, 1514 (10th Cir. 1990). The court determines from the totality of the circumstances whether a search remains within the boundaries of the consent, viewing the evidence in the light most favorable to the government. See id. at 1514-15. The general rule is that "where a suspect does not limit the scope of a search, and does not object when the search exceeds what he later claims was a more limited consent, an officer is justified in searching the entire vehicle." United States v. Wacker, 72 F.3d 1453, 1470 (10th Cir. 1995). In the present case, the district court concluded that the consent given included within its scope the trunk and the container in which the drugs were found and that it was objectively reasonable for West to have expected his consent to have included containers that could have contained drugs or firearms. West has not produced any evidence showing that the district court's conclusions are erroneous.

## C. Search of the Trunk

West argues that even if the court finds that he voluntarily consented to the search of the car and its trunk, the consent was withdrawn prior to the seizure of the amphetamine. The district court, citing Florida v. Jimeno, 500 U.S. 248, 251 (1991), found that because it was "necessary and appropriate for Deputy Barney to request additional permission to open and search the locked briefcase," absent an indication by West that the prior consent to search the entire car was revoked, the initial consent still remained active as to the rest of the trunk and items therein. West argues that by refusing Deputy Barney's request to open the locked briefcase in the trunk, West withdrew consent to search for the entire car. We decline to decide whether West's consent to search the car was revoked by him refusing permission to open the locked briefcase because Deputy Barney, in the course of the consent search, acquired probable cause to search the zippered bag, rendering consent by West irrelevant.

It is well established that although probable cause to search a car may not exist when a car is first stopped for a traffic citation, it can arise during the course of the stop. See Colorado v. Bannister, 449 U.S. 1 (1980). The government argues that at the time consent was arguably withdrawn, probable cause to search the trunk consisted of the following factors: 1) the strong odor of air freshener in the vehicle, 2) West's prior criminal record for serious offenses,

3) West's extreme nervousness beginning with the stop of the vehicle and increasing during the search of the trunk of the car, and 4) Deputy Barney's detection of the odor of methamphetamine when he opened the trunk and when he picked up the zippered bag. We find that the combination of these factors established probable cause for the search of the trunk and its contents.

An officer's detection of the smell of drugs, such as methamphetamine, in a car is entitled to substantial weight in the probable cause analysis and can be an independently sufficient basis for probable cause. See United States v. Ozbirn, 189 F.3d 1194, 1200 (10th Cir. 1999) (holding that the odor of marijuana Trooper Smith detected from the vehicle, along with other suspicious conduct such as the driver and occupant's nervous, talkative, and overly-friendly behavior, and vague description of their travel plans constitutes probable cause); United States v. Wald, 208 F.3d 902, 907 (10th Cir. 2000) (stating that the odor of raw methamphetamine would suffice to provide probable cause for a trunk search); United States v. Downs, 151 F.3d 1301, 1303 (10th Cir. 1998)(holding that when an officer encounters the "overpowering smell of raw marijuana" emanating from a vehicle, probable cause to search the vehicle's trunk exists). Deputy Barney detected the odor of methamphetamine when he opened the trunk to the rental car. Deputy Barney described the odor of methamphetamine as follows: "The smell was very sour. Meth has an, I would say a horrible odor, terrible odor, and I have

-13-

smelled that a number of times and I was sure it was meth." Deputy Barney's testimony that he detected the strong and peculiar odor of methamphetamine when he opened the trunk is very persuasive and strongly contributes to probable cause.

In addition to the smell of methamphetamine, Deputy Barney detected the scent of air freshener in the car. The Tenth Circuit has consistently held that the scent of air freshener is properly considered as a factor in the probable cause analysis. See United States v. Anderson, 114 F.3d 1059, 1066 (10th Cir. 1997); United States v. Leos-Quijada, 107 F.3d 786, 795 (10th Cir. 1997); United States v. Alvarez, 68 F.3d 1242, 1246 (10th Cir. 1995) (McKay, concurring). Deputy Barney testified that he detected the strong odor of air freshener when he stopped West. Deputy Barney stated that in his experience air freshener is often used to mask the odor of controlled substances. Deputy Barney also discovered through the criminal history check that West had a record. While knowledge of a person's prior criminal involvement is not sufficient itself to even rise to the level of reasonable suspicion, it can combine with other factors to support the requisite standard of suspicion. See United States v. Sandoval, 29 F.3d 537, 542 (10th Cir. 1994); United States v. McCranie, 703 F.2d 1213, 1218 (10th Cir. 1983).

Deputy Barney also noted that West acted in an extremely nervous manner throughout the encounter. The Tenth Circuit has held that nervousness "is of limited significance" in determining whether probable cause to search a car trunk

-14-

exists because it is not uncommon for most citizens, even innocent ones, to exhibit signs of "innocuous" nervousness when confronted by a law enforcement officer. See United States v. Wald, 208 F.3d 902, 907 (10th Cir. 2000). However, in this case the nervousness exhibited by West was different than that normally exhibited by innocent citizens stopped for traffic citations. In his testimony, Deputy Barney noted that, "Most people shake a bit but settle down and he didn't. We had a little conversation. He continued to each time I would say something he shook more." After Deputy Barney issued the ticket, he noticed that West continued to shake: "I gave him back his driver's license, the rental agreement and the warning. . . . I noted that he continued to be very shaky. With the issuance of a warning, he should have settled down." After the search began, West continued to display signs of extreme nervousness. Deputy Barney testified, "He was again, I would say nervous. He was walking around. He was fidgeting. He was – he just couldn't seem to stand still." Although normal nervousness exhibited by those stopped for a traffic citation is usually entitled to limited significance in the probable cause analysis, in this case it is entitled to somewhat more weight because of the extreme and continued nervousness exhibited by West.

We conclude that Deputy Barney had probable cause to search the bags in the trunk of the vehicle when he opened the trunk of the car and smelled the

strong odor of methamphetamine.  At that point, the factors discussed above combined to reach the level of probable cause enabling Deputy Barney to lawfully search the trunk and its contents.

### III.  CONCLUSION

In sum, we affirm the judgment of the district court.  The initial traffic stop of West was lawful and its proper scope was not exceeded, West consented to a search of the entire car, and at the time that West arguably withdrew consent to search the car, Deputy Barney had probable cause to search the trunk and, therefore, the search and seizure of the amphetamine was lawful.