F I L E D
United States Court of Appeals
Tenth Circuit

MAR 15 2004

PATRICK FISHER
Clerk

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CIPRIANO LUNA-GONZALES, also
known as Cipriano Gonzales-Luna,
also known as Juan Carlos Moreno,
also known as Juan Charles Vaca-
Moreno, also known as Juan Carlos
Vaca, also known as Juan Carlos
Vacamoreno,

    Defendant - Appellant.

No. 03-8044
(D. Wyoming)
D.C. No. 02-CR-198-J

ORDER AND JUDGMENT *

Before **KELLY**, **BRISCOE**, and **LUCERO**, Circuit Judges.

Cipriano Luna-Gonzales entered a conditional guilty plea to a charge of

possession of methamphetamine with intent to distribute in violation of 21 U.S.C.

§ 841(a)(1)(A), preserving his right to appeal the district court's denial of his

---

* The case is unanimously ordered submitted without oral argument
pursuant to Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). This order and
judgment is not binding precedent, except under the doctrines of law of the case,
res judicata, and collateral estoppel. The court generally disfavors the citation of
orders and judgments; nevertheless, an order and judgment may be cited under the
terms and conditions of 10th Cir. R. 36.3.

motion to suppress the evidence of drugs found in a search of his automobile. On appeal, we consider whether the district court erred in finding that Luna-Gonzales consented to the search that led to the discovery of the illegal drugs. We accept the district court's findings of fact unless they are clearly erroneous, United States v. Cooper, 733 F.2d 1360, 1364 (10th Cir. 1984), viewing the evidence in the light most favorable to the court's findings. United States v. Obregon, 748 F.2d 1371, 1376 (10th Cir. 1984). Exercising jurisdiction under 28 U.S.C. § 1291, we **AFFIRM**.

On October 3, 2002, Wyoming Highway Patrol Trooper Benjamin Peech stopped the automobile driven by Luna-Gonzales for following too closely. Peech explained the reason for the stop to the driver in English, and Luna-Gonzales presented his license and registration upon Peech's request. While issuing a warning for following too closely, Peech asked Luna-Gonzales to sit in his patrol car and questioned him as to his travel plans. After being informed by dispatch that the license was valid, Peech returned the license and registration to Luna-Gonzales and told him that he was free to leave. Luna-Gonzales exited the car and began walking back toward his own automobile.

Peech then reinitiated contact, inquiring in broken Spanish, "Es bueno por mi hablo con sus poquito mas?" Literally translated, his question was, "[i]t's good for me to speak with yours little bit more?" Luna-Gonzales responded, "con

mi?" (literally "with me?"), and Peech replied, "yeah." Apparently then understanding, Luna-Gonzales said "yeah" and nodded his head. The district court found that Peech confirmed the consent several times in both English and Spanish. Peech and Luna-Gonzales continued their earlier conversation about the circumstances of Luna-Gonzales' travel, first outside the patrol car and then inside the patrol car due to the cold weather. During this conversation, Peech also asked whether there were any bombs, dead bodies, cash, or drugs in the automobile. Luna-Gonzales said no to each question.

Peech then asked if he could conduct a search of the car. Luna-Gonzales replied "go," and gestured toward the car with his hand. Peech asked whether Luna-Gonzales understood his question and whether it was "ok" to search. Luna-Gonzales responded by nodding and saying "no problem." Peech proceeded to search the car; he observed screws under the back seat that had recently been removed, scratch marks on the new screws, and a pungent odor of gas fumes. He also noticed that the gas tank had been removed. These observations led Peech to ask Luna-Gonzales to follow him to a location where there were tools to continue the search. Luna-Gonzales agreed and followed Peech to a truck stop a few miles away. Once there, Peech removed the gas tank's sending unit and ultimately retrieved packages of methamphetamine from inside the gas tank.

Appealing the denial of his motion to suppress the evidence, Luna-

Gonzales argues that: (1) after Peech returned the license and registration, he was not free to leave, and thus the subsequent questioning constituted a seizure in violation of the Fourth Amendment; and (2) his ultimate consent to the search of the automobile was involuntary.

With respect to Luna-Gonzales' first argument, "[a] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." California v. Hodari D., 499 U.S. 621, 627–28 (1991) (quotation omitted). Routine traffic stops are seizures under the Fourth Amendment, United States v. West, 219 F.3d 1171, 1176 (10th Cir. 2000), and in such contexts we engage in a two-part inquiry to determine whether the Fourth Amendment has been violated. First, the stop must be justified at its inception. Id. It is undisputed that the initial stop was justified in this case. Second, we analyze "whether the officer's actions during the detention were reasonably related in scope to the circumstances which justified the interference in the first place." Id. (quotation omitted). During the detention, Peech's initial questions were limited to Luna-Gonzales' travel plans; we have held that such questions are permissible. See, e.g. United States v. Holt, 264 F.3d 1215, 1221 (10th Cir. 2001). Peech asked no more questions before he returned Luna-Gonzales' license and registration and told him that he was free to leave.

-4-

Only after Peech returned the documents and explained that Luna-Gonzales was free to leave did Peech ask additional questions about whether the automobile contained any contraband. Our jurisprudence generally allows such questions when: (1) the officer has reasonable articulable suspicion that a crime is being committed; or (2) the driver voluntarily consents to further questioning. United States v. Hernandez, 93 F.3d 1493, 1498 (10th Cir. 1996). Here, the district court found that Luna-Gonzales consented to further questioning; on appeal, Luna-Gonzales contends that his apparent consent was involuntary.

We disagree. Once an officer returns a driver's license and registration to the driver, the encounter is no longer a seizure if the officer tells the driver that he is free to leave and then, without a showing of force by the officer, asks the driver if he or she would mind answering more questions. See id. at 1498–99. Luna-Gonzales argues that despite the return of the documents, he did not understand that he was free to leave. However, Luna-Gonzales' subjective perception is not the relevant inquiry; rather, "[w]hether an encounter is a detention or a consensual encounter depends on whether the police conduct would have conveyed to a reasonable person that he or she was not free to decline the officer's requests or otherwise terminate the encounter." Id. (citation omitted).

We conclude that in the instant case, a reasonable person would have considered himself free to leave. It is undisputed that Peech told Luna-Gonzales

that he was free to leave, that Luna-Gonzales exited the police vehicle, and that he then began walking back to his own automobile. Peech then asked if they could speak a bit longer, and Luna-Gonzales agreed. At no time did Peech display a gun or any other type of force. See United States v. Ritchie, 35 F.3d 1477, 1481 (10th Cir. 1994) (noting that whether the officer displayed force should be used as a factor in determining whether an encounter was consensual).

Closely tied to Luna-Gonzales' argument that he did not consider himself free to leave is his contention that his consent was tainted by a language barrier which prevented him from understanding what Peech was saying during portions of their encounter. Our review of the record, however, convinces us that the district court was correct in its findings that Luna-Gonzales generally understood Peech's questions, and that his consent was knowing and intelligent.

For example, when Peech initially asked for license and registration, Luna-Gonzales immediately retrieved the proper documents. Moreover, Luna-Gonzales was able to convey that he had been visiting a brother in San Francisco, that he was traveling back to his home in Iowa, and that he had recently moved from Seattle. Relatively complex explanations such as these would not likely have been possible if Luna-Gonzales did not have passable English language skills. Thus, we agree with the district court's factual finding that Luna-Gonzales was sufficiently proficient in English to understand his conversation with Peech.

-6-

Luna-Gonzales also argues that his ultimate consent to the search of his automobile was not intelligently given. "Whether a consent to search that does not follow a Fourth Amendment violation was voluntary is a question of fact to be determined from the totality of the circumstances." Hernandez, 93 F.3d at 1500. More specifically, "[t]he government must show that there was no duress or coercion, express or implied, that the consent was unequivocal and specific, and that it was freely and intelligently given." Id.

As discussed above, no duress or coercion occurred in this case. In fact, Luna-Gonzales had been told that he was free to go. Though Luna-Gonzales again points to his difficulties with the English language as evidence that his consent was not intelligently given, for the reasons discussed above, we conclude that he understood the conversation well enough for his consent to the search to be intelligent and voluntary.[1]

---

[1] On appeal, Luna-Gonzales argues for the first time that he did not consent to the search conducted at the truck stop, and that it was a second search which impermissibly extended the scope of the initial consent given. We note that in general, "issues not raised in the district court will not be considered for the first time on appeal." United States v. Lotspeich, 796 F.2d 1268, 1271 (10th Cir. 1986). Our review of the record, moreover, makes it clear that when Peech decided to extend the scope of the search, he asked Luna-Gonzales if he would follow him elsewhere so that he could look further at the car. Luna-Gonzales renewed his consent to this extension of the search, and for the same reasons as described above, we conclude that his consent was voluntary and intelligent.

Accordingly, we **AFFIRM**.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge