**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 13 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MARCO ANTONIO
CASTRO-HOLGUIN,

Defendant - Appellant.

No. 03-3264

D. Kansas

(D.C. No. 02-CR-40123-JAR)

**ORDER AND JUDGMENT** *

Before **TACHA,** Chief Judge , **ANDERSON** , and **BALDOCK** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34 (a)(2); 10th Cir. R. 34.1(G). This cause is therefore ordered submitted without oral argument.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Marco Antonio Castro-Holguin entered a conditional guilty plea to possessing with intent to distribute 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana, in violation of 21 U.S.C. § 841(a), reserving his right to bring the instant appeal of the district court's denial of his motion to suppress. Mr. Castro-Holguin argues the district court should have granted the motion due to Fourth Amendment violations involving (1) the police's initial stop of his vehicle, (2) his detention during the course of the stop, and (3) the police's search of his vehicle.

**BACKGROUND**

According to the district court's description of the facts in its order denying the motion to suppress, Deputy Knowles of the Lyon County Sheriff's Department stopped Castro-Holguin's car, a black El Camino traveling northbound on I-35, at approximately 6:30 a.m. on May 6, 2002, because it did not appear to have a visible license plate. In response to Deputy Knowles' request for a driver's license, Castro-Holguin produced a Mexican passport and visa. Deputy Knowles then asked Castro-Holguin to come with him to his patrol car while the deputy ran a check on his identification papers. In the patrol car, the deputy asked Castro-Holguin about his travel plans, and Castro-Holguin told him he was traveling from Mexico to Kansas City for vacation. Deputy Knowles then received

verification of Castro-Holguin's identification. When the deputy proceeded to show Castro-Holguin the problem with the license plate, he observed that the car did have a plate but it was covered by a tinted material.

Deputy Knowles returned Castro-Holguin's identification papers and then asked him for consent to search the car. According to the deputy's testimony, he used the Spanish word "buscar" to mean "search," but Castro-Holguin did not appear to understand. The deputy then showed Castro-Holguin a consent to search form written in Spanish. Castro-Holguin spent approximately twenty-five seconds reading the form. The deputy testified that Castro-Holguin then nodded and said "si." The videotape of the stop, admitted into evidence, was not recording audio at this point, and the angle of the camera did not capture Castro-Holguin's head. Castro-Holguin and the deputy then moved toward the El Camino, and Castro-Holguin helped the deputy lower the car's tailgate.

According to Deputy Knowles' testimony, during his search of the car he noticed a sound deviation in the bed, saw carpet had been glued on the back wall of the interior, and noticed fresh silicone in the seams. These details made him suspect the car had a hidden compartment. He located the compartment behind the back interior panel at approximately 6:45 a.m. and found 100 kilograms of marijuana inside.

Castro-Holguin filed a motion to suppress on January 28, 2003, challenging the initial stop, detention, and search of the El Camino. Following a hearing, the district court issued an Order Denying Defendant's Motion to Suppress on April 23, 2003. The court held that the initial stop was justified by reasonable suspicion, based on the court's finding that the car's "license plate was obscured to the point that from a few feet away in the early morning hours, it was not visible." R. Vol. I, tab 41, at 5-6. The court also held that the subsequent detention did not exceed the permissible scope of a traffic stop because, after the deputy returned Castro-Holguin's identification papers, their encounter became consensual. The court then held that the deputy's search of the car was reasonable because it was based on Castro-Holguin's voluntary consent.

Castro-Holguin subsequently entered a conditional plea of guilty and was sentenced to twenty-six months imprisonment, following which he would be surrendered to immigration authorities for deportation proceedings. He now appeals the denial of his motion to suppress.

**DISCUSSION**

"When reviewing the denial of a motion to suppress, we accept the factual findings of the district court unless they are clearly erroneous and view the evidence in the light most favorable to the district court's determination." United

-4-

States v. Williams, 271 F.3d 1262, 1266 (10th Cir. 2001) (citations omitted).

"We are mindful that at a hearing on a motion to suppress, the credibility of the witnesses and the weight given to the evidence, as well as the inferences and conclusions drawn therefrom, are matters for the trial judge." United States v. Caro, 248 F.3d 1240, 1243 (10th Cir. 2001) (internal quotation marks omitted). "However, the ultimate determination of reasonableness under the Fourth Amendment is a question of law which we review de novo." Id.

We analyze the reasonableness of a routine traffic stop under the principles developed in Terry v. Ohio, 392 U.S. 1 (1968), for investigative detentions. United States v. Botero-Ospina, 71 F.3d 783, 786 (10th Cir. 1995) (en banc). The conduct of a police officer in stopping a vehicle must be "'justified at its inception,'" and the ensuing detention of the vehicle and its occupants must be "'reasonably related in scope to the circumstances which justified the interference in the first place.'" United States v. Holt, 264 F.3d 1215, 1220 (10th Cir. 2001) (en banc) (quoting Terry, 392 U.S. at 20).

Castro-Holguin first challenges the initial stop of his car. "An initial traffic stop is valid under the Fourth Amendment . . . if the officer has a reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." United States v. Hunnicutt, 135 F.3d 1345, 1348 (10th Cir. 1998). Deputy Knowles stopped Castro-Holguin based on a suspected violation

of Kansas law, which requires vehicles to have rear license plates "in a place and position to be clearly visible, and . . . maintained free from foreign materials and in a condition to be clearly legible." Kan. Stat. Ann. § 8-133. Castro-Holguin argues, citing expert testimony and photographs, that his license plate was in fact legible from thirty yards away despite its plastic covering. He questions Deputy Knowles' credibility in stating otherwise. The district court, however, found that the tinted plastic covering on the license plate obstructed its visibility and that the deputy in fact "could not see the license plate clearly." R. Vol. I, tab 41, at 6. We have reviewed the record, which includes photographs of the back of the car, and do not consider the district court's finding clearly erroneous. We thus hold that Deputy Knowles had reasonable suspicion of an equipment violation justifying his stop of Castro-Holguin's car.

Castro-Holguin next challenges the scope of his detention during the traffic stop. We have held that a police officer may, during a routine traffic stop, "ask about the driver's authority to operate the vehicle," check the driver's license and registration, and ask about travel plans. Holt, 264 F.3d at 1221. Normally, once a motorist has "produced a valid license and proof that he is entitled to operate the car, he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning." Id. (internal quotation marks omitted). However, further questioning may occur if the motorist consents to

such questioning or if the detaining officer has a reasonable articulable basis for suspecting the motorist of criminal activity. United States v. West, 219 F.3d 1171, 1176 (10th Cir. 2000).

In this case, the district court found that the encounter between Deputy Knowles and Castro-Holguin became consensual, and thus no longer a seizure under the Fourth Amendment, after the deputy returned Castro-Holguin's identification papers. Castro-Holguin disputes this finding, arguing that Deputy Knowles did not allow him to return to his car and did not tell him he was free to go. We have held that there is no bright-line rule requiring an officer to tell the motorist he is free to go or to refuse to answer further questions before an encounter may become consensual. See id. at 1176-77; United States v. Patten, 183 F.3d 1190, 1194 (10th Cir. 1999). Rather, "[w]hether an encounter can be deemed consensual depends on 'whether the police conduct would have conveyed to a reasonable person that he or she was not free to decline the officer's requests or otherwise terminate the encounter.'" West, 219 F.3d at 1176 (quoting United States v. Hernandez, 93 F.3d 1493, 1498 (10th Cir. 1996)).

Here, there is no indication that Deputy Knowles forcibly prevented Castro-Holguin from returning to his car. The deputy was the only officer present at the time and testified that he did not raise his voice, display any weapon, or otherwise make a coercive show of authority. We recognize that, as Castro-Holguin points

out, the deputy's testimony could be interpreted to suggest that the communication problems he was having with Castro-Holguin after he returned the identification papers and attempted to request permission to search the car prevented Castro-Holguin from understanding that the traffic stop had ended. R. Vol. IV at 56. However, the determination of whether an encounter was consensual "'calls for the refined judgment of the trial court.'" Patten, 183 F.3d at 1194 (quoting United States v. Werking, 915 F.2d 1404, 1409 (10th Cir. 1990)). We do not consider the court's findings on this matter clearly erroneous and thus uphold its conclusion that the encounter following the return of Castro-Holguin's papers was consensual.

Castro-Holguin also challenges Deputy Knowles' search of the car, arguing that he did not voluntarily consent to the deputy's request to search. Voluntariness "'is a question of fact to be determined from all the circumstances.'" United States v. Taverna, 348 F.3d 873, 878 (10th Cir. 2003) (quoting Ohio v. Robinette, 519 U.S. 33, 40 (1996)). In the context of warrantless searches based on consent, the government bears the burden of establishing that consent was given freely and intelligently without implied or express duress or coercion. Id. Here, the district court found that Castro-Holguin's consent was voluntary. The court reasoned that although it was unclear from the videotape whether Castro-Holguin nodded or said "si" after reading the

-8-

consent form in Spanish, as Deputy Knowles testified he did, Castro-Holguin's subsequent action of "open[ing] the tailgate for the deputy, without any apparent prompting," corroborated the deputy's testimony. R. Vol. I, tab 41, at 8. Although Castro-Holguin argues there are other "plausible explanation[s]" for his behavior, Appellant's Br. at 16, he has not established that the district court's finding is clearly erroneous. His reliance on Bumper v. North Carolina, 391 U.S. 543 (1968), is misplaced because there is no indication Deputy Knowles "claim[ed] . . . lawful authority" to search the car. See id. at 549 (holding consent to search was involuntary where police claimed to have a warrant authorizing the search). We therefore uphold the district court's determination that the deputy's search of the car was justified by consent.

## CONCLUSION

For the foregoing reasons, the district court's denial of the motion to suppress is AFFIRMED.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

-9-