F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**MAY 18 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

GREGORY REESE FISHER,

    Defendant-Appellant.

No. 03-3187
(Kansas)
(D.C. No. 02-CR-40078-SAC)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, **LUCERO**, and **O'BRIEN**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1.9(G). The case is

therefore ordered submitted without oral argument.

Gregory Reese Fisher pled guilty to possession of ephedrine and

pseudoephedrine with the intent to manufacture methamphetamine in violation of

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

21 U.S.C. § 841(c)(1). He appeals the district court's denial of his motion to suppress. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

Background

On the morning of May 8, 2002, an employee at the Target store in Salina, Kansas, noticed Fisher attempting to conceal an item from the electronics department. The employee reported Fisher to Diane Dowell, the assets protection team leader at the store. Dowell began visual surveillance of him. She followed Fisher as he walked past the checkout lanes and into the food section, where he eventually turned down a snack aisle. As Dowell walked past this same aisle, she observed Fisher with his hand extended up into a shelf. When Fisher saw Dowell, he quickly pulled his hand away from the shelf. He also positioned his body to prevent Dowell from seeing what was on the shelf.

When Fisher left the food section, Dowell found ten packages of lithium batteries behind some food items.[1] Knowing that lithium is used to manufacture methamphetamine, Dowell instructed another employee to contact the police department's drug task force. Shortly thereafter, Investigator Gary Hanus arrived at the store.

Agent Hanus and Dowell continued surveillance of Fisher, who at that time was trying on a pair of shoes in the shoe department. Fisher remained in the store

---

[1] Each package contained one or two batteries.

another forty-five minutes. He then purchased a pair of shoes and some other items and left the store. Agent Hanus observed him walk across the Target parking lot to the Sam's Club store. Fisher placed his three Target shopping bags in the vestibule outside the Sam's Club store entrance and went inside. Agent Hanus and another agent followed Fisher around the store. Agent Hanus observed Fisher continually looking over his shoulder to see if someone was following him, leading Agent Hanus to believe Fisher was conducting counter-surveillance. He and the other agent also observed Fisher walk by the cold medicine aisle twice without going down it. After approximately one hour in the store, Fisher left and headed in the direction of the Wal-Mart store across the street.

While Fisher was walking across the Sam's Club's parking lot, he was stopped by Lieutenant Joseph Garman, also from the drug task force, who had been contacted by Agent Hanus. When Agent Hanus approached, he heard Fisher tell Lieutenant Garman that he did not have to tell him his name. Lieutenant Garman advised Fisher he was a shoplifting suspect and did have to reveal his name. Fisher then informed them his name was Greg Fisher of Belleville, Kansas, and denied stealing or attempting to steal anything from the Target store.

During this questioning, the third agent at the scene, Agent Steve Garman, recalled that Fisher had been seen on a Target store surveillance tape submitted to

the drug task force a month earlier.[2]  Officer Hanus then recalled having advised one of the other agents to send the tape to Detective Vince Crough with the Republic County Sheriff's Department.[3]  When Agent Hanus mentioned Detective Crough, Fisher stated he knew him.  Agent Hanus then telephoned Detective Crough, who informed him Greg Fisher was heavily involved in methamphetamine and was under investigation by the Republic County Sheriff's Department.  Detective Crough also advised Agent Hanus that Fisher would either be driving a blue or yellow Cadillac.

After speaking with Detective Crough, Agent Hanus asked Fisher if he had any weapons on him and patted him down.  Fisher did not have any weapons but did have car keys in his back pocket.  Agent Hanus asked to see the keys; Fisher provided them to him.  The keys were for a General Motors vehicle, which was consistent with Detective Crough's information that Fisher would be operating a Cadillac.  When agents resumed questioning regarding the attempted shoplifting, Fisher requested an attorney.  The agents arrested Fisher.  A city patrol car arrived; as the agents were placing Fisher into the vehicle, he stated he wished to

---

[2] Frequently, when Target employees contact the drug task force regarding customers purchasing cold pills or lithium batteries, the task force is unable to go to the store.  Therefore, the Target store provides the task force with its surveillance tapes.  The task force then provides these tapes to other law enforcement agencies to assist them in developing cases.

[3] Belleville is in Republic County, Kansas.

cooperate. The agents asked him where his vehicle was located and Fisher stated it was in the Target parking lot. The agents discovered a blue Cadillac in the parking lot and observed a plastic sack filled with cold pill medicine boxes lying on the front passenger-side floorboard. Knowing that cold pills are commonly used to manufacture methamphetamine, the agents towed the vehicle to the Salina Police Department and obtained a search warrant for the vehicle. Upon searching the vehicle, the officers discovered methamphetamine, marijuana, and 4,422 cold pills containing pseudoephedrine hydrochloride.

Fisher was charged with possession of ephedrine and pseudoephedrine with the intent to manufacture methamphetamine in violation of 21 U.S.C. § 841(c)(1) (Count 1) and attempted manufacturing of more than fifty grams of methamphetamine in violation of 21 U.S.C. § 846 (Count 2). Subsequently, he filed a motion to suppress the evidence found in his vehicle, which the district court denied. On January 30, 2003, Fisher entered a conditional guilty plea to Count 1, reserving the right to appeal the court's denial of his motion to suppress. He was sentenced to sixty months imprisonment. This appeal followed.

## Standard of Review

"In reviewing the denial of a motion to suppress, we accept the factual findings of the district court unless they are clearly erroneous." *United States v. West*, 219 F.3d 1171, 1176 (10th Cir. 2000) (citation omitted). "However, we

review *de novo* the ultimate determination of the reasonableness of the search under the Fourth Amendment." *United States v. Bustillos-Munoz*, 235 F.3d 505, 511 (10th Cir. 2000) (citation omitted), *cert. denied*, 534 U.S. 854 (2001).

Discussion

Fisher contends the district court erred in denying his motion to suppress because (1) the agent making the initial stop did not have sufficient reasonable suspicion to detain him and (2) his detention lasted longer than necessary to effectuate the purpose of the stop.

*(1) Reasonable Suspicion*

Fisher alleges the agents lacked reasonable articulable suspicion to stop him. He states the basis for his stop after he left the Sam's Club store was Dowell's suspicion that he had attempted to shoplift batteries from the Target store. He claims, however, that Dowell did not observe him select the batteries off the shelf or place them behind the food item. Rather, he argues she merely saw him move his hand "quickly" from the shelf, which any reasonable person would do if startled by a stranger, and turn his back to her, also a normal reaction to a stranger's stares. These actions, Fisher claims, demonstrate a shopper trying to return property, not steal it. Fisher also argues that his looking over his shoulder while shopping, which Agent Hanus described as "counter-surveillance," is a common reaction when one notices that strange individuals are following

him.[4]

The district court had "no difficulty concluding that the agents had reasonable suspicion to believe that [Fisher] had attempted to shoplift lithium batteries at the Target store and that this justified the investigative detention of [him] in the Sam's Club parking lot." (R., Vol. I, Docket Entry 33 at 17-18.) It based its decision on the following five factors: (1) the decision to take ten packages of lithium batteries is hardly consistent with impulse shopping; (2) Fisher's behavior upon being seen is not what one would expect from a shopper only changing his mind about a purchase and laying aside the unwanted items; (3) Fisher's placement of the batteries behind the food items indicates he either did not want to be connected to the batteries or he wanted to retrieve them sometime later; (4) it is unlikely the batteries had been left in the food aisle by another customer because the Target store management requires its employees to check each night for misplaced merchandise and the batteries were found a relatively short time after the Target store opened that morning; and (5) because lithium is an ingredient in the manufacturing of methamphetamine, Fisher would have a

_____

[4] Fisher also contends Kansas law prohibits an officer from stopping or arresting suspects for misdemeanors unless they have personally observed the conduct or special and/or exigent circumstances are present. He cites to KAN. STAT. ANN. § 22-2410. However, even assuming state law is relevant in a federal prosecution, that statute specifically refers only to when a law enforcement officer may arrest a person—it does not apply to the stopping of suspects.

reason for shoplifting such a large number of lithium batteries rather than lawfully purchasing them and calling attention to himself. In addition to the above five factors relating to his actions in the Target store, the district court noted that Fisher went to the Sam's Club store and engaged in "counter-surveillance."

We agree with the district court that the agents had reasonable suspicion to conduct an investigative detention of Fisher. An officer's brief investigatory stop of a person that falls short of a traditional arrest is reasonable under the Fourth Amendment if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot. *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). The detaining officer must have a "particularized and objective basis" for suspecting wrongdoing; an inchoate suspicion or "hunch" is insufficient. *United States v. Arvizu*, 534 U.S. 266, 273-74 (2002); *United States v. Soto-Cervantes*, 138 F.3d 1319, 1322 (10th Cir.) (quotations omitted), *cert. denied*, 525 U.S. 853 (1998). In determining whether an officer had reasonable suspicion to stop an individual, a court must look at the totality of the circumstances. *Arvizu*, 534 U.S. at 273. "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might elude an untrained person." *Id.* (quotations omitted).

Here, the totality of the circumstances demonstrates the agents had reasonable suspicion to stop Fisher for attempting to shoplift lithium batteries which, based on their experience, are used to manufacture methamphetamine. It was reasonable for them to infer from Fisher's behavior in the Target store (his concealing of an item in the electronics department and the subsequent finding of several packets of lithium batteries on a shelf in the snack aisle where he was seen attempting to hide something) and their "counter-surveillance" in the Sam's Club store, that Fisher was attempting to shoplift lithium batteries for the manufacturing of methamphetamine.

On appeal, Fisher argues that two of the six factors recognized by the district court as establishing reasonable suspicion are susceptible to an innocent explanation. This argument, however, constitutes the "divide-and-conquer" approach to the totality of the circumstances test specifically rejected in *Arvizu*. *Id.* at 274. There, the Supreme Court stated:

> A determination that reasonable suspicion exists, however, need not rule out the possibility of innocent conduct . . . . Undoubtedly, each of [the] factors alone is susceptible of [an] innocent explanation, and some factors are more probative than others. Taken together, [however,] we believe they sufficed to form a particularized and objective basis for [the officer] stopping the vehicle . . . .

*Id.* at 277-78.

The same is true here. Admittedly, if taken in isolation, some of the factors relied upon by the district court, which we adopt on appeal, have innocent

explanations. However, considered collectively, which is the proper analysis, they sufficiently provided the agents with the requisite reasonable suspicion.

*(2) Length of Detention*

Fisher argues that even if the agents were justified in stopping him, the duration of the stop exceeded that which was necessary to effectuate the purpose of the stop. Specifically, he contends the purpose of the stop was effectuated when he identified himself and denied attempting to shoplift the batteries. Therefore, he alleges he should have been allowed to leave at that time and any further detention of him was unlawful.

The district court rejected this argument. It noted that during their questioning of Fisher regarding the attempted shoplifting, the agents recognized him as someone observed on a Target store surveillance tape purchasing pseudoephedrine tablets. Knowing the tape had been sent to Detective Crough, the agents telephoned him and learned Fisher was the subject of an on-going investigation and believed to be heavily involved in methamphetamine. Following a brief pat-down search for weapons and a few more questions concerning the attempted shoplifting, the agents arrested Fisher. The district court concluded "[t]he length and scope of this detention was reasonably related to the purpose of the stop, that was, the investigation of an attempted shoplifting incident involving items used in the manufacture of methamphetamine." (R., Vol

I., Docket Entry #33 at 20.)

We agree with the district court's reasoning. "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983). "It is the [government's] burden to demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure." *Id.* The purpose of the stop in this case was not to investigate an attempted shoplifting but rather, to investigate an attempted shoplifting of lithium batteries—items used to manufacture methamphetamine. As the district court concluded, the duration of the stop, from Fisher's initial detention to his arrest, lasted no longer than necessary to effectuate this purpose.[5]

Fisher maintains that because the information pertaining to the Target store surveillance tape and his involvement with methamphetamine was not obtained until after the initial stop, it could not be used to justify his continued detention. This argument is erroneous. In *Soto-Cervantes*, 138 F.3d at 1322, we stated:

> Once the concern that justified the initial stop is dispelled, further detention will violate the Fourth Amendment unless the additional detention is supported by a reasonable suspicion of criminal activity. In other words, reasonable suspicion must exist at all stages of the detention, although it

---

[5] Fisher does not challenge the district court's conclusion that the agents had probable cause to arrest him.

-11-

need not be based on the same facts throughout.

Accordingly, it is immaterial that some of the information supporting Fisher's continued detention was not learned until after the initial stop.

<u>Conclusion</u>

The district court's denial of Fisher's motion to suppress is AFFIRMED.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge