**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 27 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

WINFORD LAMONT HENLEY,

    Defendant-Appellant.

No. 03-6181
(W.D. Oklahoma)
(D.Ct. No. 02-CR-199-M)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, Circuit Judge, **HOLLOWAY**, Senior Circuit Judge, and **TYMKOVICH**, Circuit Judge.

---

Winford Lamont Henley appeals the district court's denial of his motion to suppress. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I. Background

On September 10, 2002, at approximately 10:33 p.m., Oklahoma City Police Officer Dan Dominguez and a recruit officer responded to a disturbance

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

call from the alleged victim's home on 11th Street in Oklahoma City, Oklahoma. The alleged victim, Danyelle Steele, informed them that she had been visiting a friend down the street when two females, Danesha Dejear and Neni Turner, attacked her. While the officers were taking Steele's statement, she pointed to a yellow Pontiac Grand Prix pulling out of the driveway where the assault had occurred and stated the individuals who had assaulted her were in the vehicle. After Steele's reassurances that the people in the vehicle were her assaulters, Dominguez followed the vehicle in his patrol car. Shortly thereafter, the vehicle pulled into a driveway on 12th Street. Officer Dominguez pulled in behind the vehicle and turned on his overhead equipment and spotlight.

Upon stopping, Officer Dominguez observed the male passenger step from the front passenger seat of the vehicle, look back at him, and run up the driveway and back behind nearby houses. Dominguez approached the driver of the vehicle, who identified herself as Dejear. He observed the butt of an SKS assault rifle, partially wrapped in a pink bed sheet, sticking up from the passenger side floorboard. He also discovered an empty pistol box on the front seat.[1] Fearing that the fleeing passenger might have the missing pistol, Dominguez broadcast a

---

[1] This box was never recovered or booked into evidence. Dominguez testified at the suppression hearing that this error was an oversight on his part.

description of him to the other officers in the area.[2]  Based on his own observations, Dominguez described the passenger as a black male, stocky, large build, and wearing a black shirt, black pants, and black sneakers.  He also warned that the individual was possibly armed.

While other officers were blanketing the area looking for the male passenger, Dominguez continued to question Dejear.  While doing so, Dominguez heard over the radio that an officer had been in a foot chase with an individual matching the description of the male passenger but had lost him.  He also learned that shortly after the foot chase, another officer had been flagged down by a citizen who reported that a man dressed in black had attempted to get into his vehicle.  The citizen informed the officer that the man had entered a house on 13th Street.  The owner of the home, although initially uncooperative, informed the officers he had seen a man wearing black clothes running eastbound through his yard.

Thereafter, Officer Gilbert Chapa arrived in the area.  Dominguez asked him to go to Steele's house and finish interviewing her.  While Chapa was speaking with Steele in his patrol car, he noticed 5-10 people congregated in the

_____

[2] The broadcast occurred at approximately 10:55 p.m., twenty minutes after Dominguez first arrived at Steele's residence.

-3-

front yard of the residence where the alleged assault had occurred.[3] He then observed a yellow taxi cab drive by, stop in front of the same residence, and an individual get into the cab. Although Chapa could not determine whether the individual was a male or female, he radioed other officers to stop the cab.

Immediately thereafter, Lieutenant Elizabeth Lewis stopped the taxicab and approached the passenger (Henley) seated in the back seat. She noticed he was a black male who was sweating profusely and breathing heavily. He was wearing black pants and black shoes. Although Henley was wearing a white shirt, it was unbuttoned and dry. When Lieutenant Lewis asked Henley for identification, he replied he left it at home. Henley then made a quick movement towards the opposite door. He was removed from the cab and handcuffed. A pat-down search revealed ammunition in his pants pocket, which later was identified as matching the ammunition discovered in the rifle recovered from Dejear's vehicle. During the search of the cab, a dark navy blue pullover shirt was found stuffed under the driver's seat; the shirt was wadded up and soaked with sweat. Officers transported Henley to Officer Dominguez's location.[4] Both Dominguez and

---

[3] During this time, Officer Chapa believed that one assault suspect was in custody and that the other suspect was still at large. He also believed the second suspect was a male.

[4] Henley initially identified himself to the officers as Lamont Jones and then as Rico Williams, the same name Dejear had provided to the officers when asked who was in her vehicle.

Dejear identified Henley as the male who had fled from Dejear's vehicle.[5]  Upon running Henley's fingerprints, officers learned Henley had prior felony convictions.

Henley was interviewed on September 13 and 18 by the Oklahoma City Police Department and the Bureau of Alcohol, Tobacco and Firearms (ATF), respectively.  During both interviews, Henley denied being in Dejear's vehicle on the night of his arrest but admitted to possessing the ammunition found in his pocket.

On November 6, 2002, Henley was indicted for being a felon in possession of an SKS semiautomatic rifle and ammunition in violation of 18 U.S.C. § 922(g)(1).  Henley filed a motion to suppress and to dismiss the indictment, which was denied.  A superseding indictment was filed on February 10, 2003, charging Henley  with being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1).  Henley entered a conditional plea, retaining the right to appeal the denial of his motion to suppress.  Henley was sentenced to 100 months imprisonment.

## II.  Discussion

"In reviewing the denial of a motion to suppress, we accept the factual findings of the district court unless they are clearly erroneous."  *United States v. West*, 219

---

[5] Dejear subsequently denied identifying Henley as her passenger.

F.3d 1171, 1176 (10th Cir. 2000). "However, we review *de novo* the ultimate

determination of the reasonableness of the search [or seizure] under the Fourth

Amendment." *United States v. Bustillos-Munoz*, 235 F.3d 505, 511 (10th Cir. 2000).

Henley argues the ammunition seized from his person and his subsequent

confessions must be suppressed as fruits of his unlawful seizure from the taxi cab.

He asserts his seizure was unlawful because the officers lacked any reasonable,

articulable basis for stopping the cab and seizing him; in particular, he alleges they

lacked a reasonable belief that he had committed or was about to commit any offense.

Even assuming the stop was lawful, Henley contends that because the other assault

suspect was female, he should have been allowed to leave once the officers

discovered he was a male.[6]

The district court rejected Henley's arguments. It concluded:

> Having heard the evidence presented, the Court finds, based upon the
> totality of the circumstances, that the stop of the taxicab was lawful and
> did not violate [Henley's] Fourth Amendment rights. Specifically, the
> Court finds the following specific facts and the rational inferences drawn
> from those facts give rise to a reasonable suspicion of criminal activity
> and justify the stop of the taxicab. First, at the time the taxicab picked
> up its passenger and was subsequently stopped, the investigation into the

---

[6] The government argues Henley lacks standing to challenge the stop and search of Dejear's vehicle because he did not own the car or claim any interest in the rifle or ammunition. However, Henley is not contesting the stop and search of Dejear's vehicle; rather, he is challenging the stop of the taxi cab, his seizure from the cab, and the subsequent discovery of ammunition on his person. Therefore, the government's standing argument is inapplicable.

alleged assault was still ongoing. Second, at the time the taxicab picked up its passenger, only one of the two suspects had been arrested; the other suspect was still at large. Third, Officer Chapa was unable to identify whether the individual who got into the taxicab was a male or a female; it is rational to infer that the individual who got into the taxicab could be Turner, the other suspect who had not been arrested. Fourth, the taxicab stopped at the house where the alleged assault had occurred; it is reasonable to infer that the other suspect was still at that house and likely could be the individual who got into the taxicab. Finally, the taxicab arrived within thirty minutes to an hour after the alleged assault; based on this timing, it is reasonable to infer that the person who got into the taxicab might be one of the suspects.

(R. Doc. 30 at 5.) We agree with the district court that the stop of the taxicab and Henley's seizure was lawful.

An officer's investigatory stop of a person that falls short of a traditional arrest is reasonable under the Fourth Amendment if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot. *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). The detaining officer must have a "particularized and objective basis" for suspecting wrongdoing; an inchoate suspicion or "hunch" is insufficient. *United States v. Arvizu*, 534 U.S. 266, 273-74 (2002) (quotations omitted); *United States v. Soto-Cervantes*, 138 F.3d 1319, 1322 (10th Cir. 1998) (quotations omitted). In determining whether an officer had reasonable suspicion to stop an individual, a court must look at the totality of the circumstances. *Arvizu*, 534 U.S. at 273. "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them

that might well elude an untrained person." *Id.* (quotations omitted).

Here, the totality of the circumstances clearly demonstrate that the officers had a reasonable, articulable suspicion for stopping the taxi cab and seizing Henley. Henley had been seen by Officer Chapa leaving the residence where the alleged assault had occurred. Although Officer Chapa could not identify whether the individual getting into the cab was a male or female, because the assault investigation was still ongoing, it was reasonable for the officers to stop the taxi cab to determine whether the individual in the taxi cab was the other assault suspect or a material witness. Once Lieutenant Lewis stopped the cab, her seizure of Henley was also reasonable. She noticed Henley matched the description of the passenger seen fleeing from Dejear's car. Although Henley was wearing a white shirt rather than a black one, the shirt "was half on his body, half off his body, like he was in a rush to put it on." (R. Vol. 2, Supp. Tr. at 22.) Lieutenant Lewis also observed that although Henley was sweating and breathing heavily, the white shirt was dry. Based on these observations and Henley's quick movement to the opposite door, it was reasonable for the officers to remove Henley from the cab and detain him until identified by Officer Dominguez and Dejear as the fleeing passenger.

Because the officers were searching for a female suspect, Henley argues that once it was determined he was a male, he should have been allowed to leave. This argument ignores the fact that the officers were also looking for the passenger who

fled from Dejear's vehicle, in which an empty pistol box was found. Because Henley matched the description of that passenger, it was reasonable for the officers to detain him and further investigate the matter.

Henley also complains that after Officer Dominguez stopped Dejear's vehicle, without sufficient cause he alerted other officers to be on the lookout for a black male, possibly armed. Henley claims the alert was not reasonable based upon two facts: 1) Officer Dominguez made no attempt to pursue the fleeing black male; and 2) he did not investigate or even question Dejear regarding the missing pistol. Officer Dominguez's actions, however, were reasonable under the circumstances. He had a potential assault suspect (Dejear) still in the vehicle; chasing after a fleeing passenger was impractical. Moreover, at the time the black male passenger fled, Officer Dominguez was unaware of the loaded firearm or empty pistol box in Dejear's vehicle. It was not until after discovering these items that Officer Dominguez suspected the fleeing passenger may be armed and, consequently, a threat to the community. Officer Dominguez could logically infer that the fleeing passenger was armed based upon the presence of an assault rifle in the vehicle, the empty pistol box on the seat, and his flight from the vehicle. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("Headlong flight–wherever it occurs–is the consummate act of evasion: It is not necessarily indicative of wrongdoing but it is certainly suggestive of such."). Whether Officer Dominquez questioned Dejear about the missing pistol is irrelevant;

it was proper to alert others to possible danger.  It would be unreasonable not to do so.

Based on the above, the district court properly denied Henley's motion to suppress.  AFFIRMED.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge